[No. 27382.   *En Banc.*   April 6, 1939.]

ARTHUR L. JOHNSON, *Respondent,* v. C. A. BURNHAM
et al., Appellants.[1]

*Geo. F. Yantis, P. C. Kibbe,* and *Guy E. Kelly,* for
appellants.

*W. H. Abel* and *Smith Troy,* for respondent.

BEALS, J.—On the afternoon of April 10, 1937,
plaintiff, Arthur L. Johnson, was driving his Chevrolet

[1]Reported in 88 P. (2d) 833.

sedan in an easterly direction on the road between Tenino and Rainier, in Thurston county. This highway crosses the Deschutes river by a bridge, which is 16.5 feet in width. At the same time, defendant C. A. Burnham, accompanied by his wife, was driving his Dodge sedan in a westerly direction, toward Tenino. The cars collided on the bridge above referred to, with the result that plaintiff suffered severe personal injuries, his car also being damaged.

Plaintiff sued defendants, alleging that his injuries were the result of the negligence of defendant C. A. Burnham, in that the latter negligently drove his automobile to his left of the center of the highway and bridge and into the lane of travel rightfully occupied by plaintiff, causing plaintiff to drive his car as far as possible to his right in an endeavor to avoid colliding with defendant's car; that, notwithstanding plaintiff's efforts, the cars collided, causing plaintiff to lose control of his automobile, with the result that the same was projected over to the opposite side of the bridge and through the railing on the easterly approach, the car dropping a distance of about ten feet to the ground, seriously injuring plaintiff, who prayed for judgment in the sum of thirty thousand dollars for personal injuries, for medical and other expenses, and for three hundred dollars for damages to his car.

Defendants answered, denying liability for plaintiff's injuries and denying all negligence on their part. By way of an affirmative defense, they pleaded contributory negligence, praying that the action be dismissed. Plaintiff replied, denying the affirmative allegations contained in defendants' answer.

The action was tried to a jury, and resulted in a verdict in plaintiff's favor for the sum of $21,100 on account of the personal injuries suffered by plaintiff and his expenses in connection therewith, and for the

further sum of three hundred dollars by way of damages to plaintiff's automobile. Defendants moved for judgment in their favor notwithstanding the verdict, and in the alternative for a new trial, which motions were denied. Judgment upon the verdict was thereupon entered against defendants, from which they have appealed.

Error is assigned upon the ruling of the trial court denying appellants' motion for a nonsuit; upon the submission to the jury of the question of respondent's contributory negligence; upon the denial of appellants' motion for a directed verdict at the close of the case; upon the denial of appellants' motion for judgment in their favor notwithstanding the verdict; and upon the denial of their motion for a new trial. Error is also assigned upon the refusal of the trial court to hold that excessive damages were awarded, under the influence of passion and prejudice.

In this opinion, appellant C. A. Burnham will be referred to as though he were the sole party appellant.

Appellant did not stand on his motion for a nonsuit, but introduced his evidence. Under these circumstances, appellant cannot argue here that his motion for a nonsuit should have been granted. The case must be considered upon all the evidence.

Appellant testified that, on the day of the accident, he was returning from his ranch near Rainier to his home at Bucoda. There was a little mist in the air, and his windshield swipe was in operation. As he approached the bridge over the Deschutes river, he saw respondent's car about four hundred feet beyond the bridge, approaching at high speed. He stated that his car was moving at about fifteen miles an hour, that he lessened his speed, and before he reached the middle of the bridge, came to a stop. He further testified that respondent's car continued to move rapidly, and that

when it reached the crest of the bridge it struck an upright post on respondent's right-hand side of the bridge, swerved over to respondent's left, and then back to respondent's right-hand side, again striking the guard plank; that respondent's car then swerved to its left, and struck the rear end of appellant's car, bounding back and forth, finally going through the rail on respondent's left-hand side.

Respondent testified that he approached the bridge at not over twenty miles an hour, and slowed down to fifteen miles an hour; that he observed appellant's car driving over onto respondent's side of the bridge, but did not apply his brakes, because the planks on the bridge were wet and slippery, and because he noticed that appellant was veering to his right, and anticipated that appellant would return to his proper side of the road; that he did everything possible to avoid the collision, and when the automobiles collided, he was going only twelve or fifteen miles an hour.

Appellant does not contend that no case was made for the jury as to his own negligence, but he argues that the trial court should have held as matter of law that respondent was guilty of contributory negligence, and that the court should have instructed the jury to bring in a verdict for appellant.

The bridge was narrow, but the roadway was wide enough to permit two automobiles to pass in entire safety. Mrs. Burnham testified, and respondent's wife and two sons, who were riding with him, gave their version of the accident. Several disinterested witnesses testified on each side, and the evidence is in strong conflict.

Appellant argues that, if respondent saw appellant approaching, driving on respondent's side of the road, the duty rested upon respondent to stop his car. While the visibility was not perfect, it was good, and appel-

lant testified that he saw respondent's car approaching from a considerable distance.

In the case of *Luther v. Pacific Fruit & Produce Co.*, 143 Wash. 308, 255 Pac. 365, this court said:

"One driving an automobile along a public highway who sees a car approaching on the wrong side of the road has a right to assume that the driver thereof will observe the law of the road and seasonably turn over to the right, and he may proceed upon this assumption until he sees or, in the exercise of ordinary care ought to see, that his assumption is unwarranted. When the appellant became aware, or in the exercise of ordinary care should have become aware, that an accident was imminent, he was bound to look out for himself and to exercise the care of a prudent man for the purpose of avoiding an accident."

The case of *Thomson v. Schirber*, 164 Wash. 177, 2 P. (2d) 664, is to the same effect.

As a general rule, subject, of course, to exceptions, the jury should determine whether or not the driver of a motor vehicle, who sees another car approaching on his own side of the highway, and fails to stop, is guilty either of negligence or contributory negligence. According to the evidence introduced by respondent, appellant's car was turning from respondent's side of the highway when the collision occurred. The left front of respondent's car struck the left side of appellant's car, somewhere back of the center. The tire on the left front wheel of respondent's car was deflated, and the fender bent down against it.

As above stated, the evidence of the persons riding in the two cars is directly in conflict as to the speed of the cars and the positions they were occupying on the bridge. The evidence introduced by the respective parties is in conflict in other particulars. While the statement of facts is voluminous, the material evidence is comprised within a comparatively narrow compass.

Examination thereof convinces us that the trial court properly refused to decide, as matter of law, that respondent was guilty of such contributory negligence as bars his recovery in this action, and that the question of whether or not respondent was guilty of contributory negligence which proximately contributed to the accident was properly submitted to the jury. It cannot be held that the trial court erred in refusing to determine this question in appellant's favor as matter of law.

Appellant contends that the verdict of the jury was grossly excessive. Respondent's expenses for medical services and hospital expenses amounted to $1,100. The jury returned a verdict for $21,100, and three hundred dollars additional as damages to respondent's automobile. Manifestly, the jury allowed twenty thousand dollars to respondent for his injuries and resulting loss of time and impairment of earning power.

At the time of the accident, respondent was fifty years old, enjoying a life expectancy of 20.9 years. He was a carpenter, house builder, and contractor, earning, as he testified, between two and three hundred dollars a month. As a result of the accident, he suffered a compound fracture of his left leg just above the ankle, both bones of the lower leg having been broken in several places, the broken bones protruding through the flesh, forming a jagged wound on the outside of the ankle. The main artery supplying the foot was severed, and fourteen stitches were required to close the wound. He suffered a serious impairment of blood circulation in the injured leg, and bone infection set in, which persisted a long time, some infection being still present at the time of the trial fourteen months after the accident. His leg was in a cast for many months, and the injuries did not heal satisfactorily. At times his foot would swell, and tissues would slough.

Respondent, of course, suffered much pain, he could not sleep, lost thirty pounds in weight, and became nervous and neurotic.

Doctors who testified on behalf of respondent stated that infection might flare up in the future, and that the foot would probably not reach a permanent stable condition for from six months to a year after the trial. The doctors stated that it was difficult to state exactly what respondent's condition in the future would probably be, but they considered it likely that there would be a loss of from twenty-five to fifty per cent in the use of the injured leg.

The jury, of course, heard the evidence, saw respondent's foot, and heard his testimony and that of the doctors concerning his injuries. In his motion for a new trial, appellant assigned as one of the grounds for his motion that the verdict was excessive. The trial court denied appellant's motion for a new trial and allowed the verdict to stand. Under these circumstances, this court would be slow to differ with the trial court upon such a question as that now under discussion. *Sherrill v. Olympic Ice Cream Co.,* 135 Wash. 99, 237 Pac. 14; *Dorian v. Boone,* 152 Wash. 681, 279 Pac. 107; *Haaga v. Saginaw Logging Co.,* 169 Wash. 547, 14 P. (2d) 55.

While the verdict is large, it clearly appears from the evidence that respondent was incapacitated from following his occupation for a long period, and that he suffered long continued and severe pain. The evidence indicates that at best the usefulness of the injured leg will be seriously and permanently impaired.

While upon this phase of the case we are not unanimously agreed, the majority are of the opinion that, in view of the evidence and of the fact that the trial court refused to interfere in any way with the amount of the

507

verdict, this court should not direct that a new trial be granted unless respondent should elect to accept a lesser amount.

The judgment appealed from is affirmed.

ALL CONCUR.