[No. 28387.   Department One.   October 9, 1941.]

C. A. BURNHAM, *Respondent,* v. COMMERCIAL CASUALTY INSURANCE COMPANY OF NEWARK, NEW JERSEY, *Appellant.*[1]

[1]Reported in 117 P. (2d) 644.

*Ryan, Askren & Mathewson* and *Henderson, Carnahan & Thompson,* for appellant.

*George F. Yantis, William M. Lowry,* and *Carl H. Skoog,* for respondent.

MILLARD, J.—Under date of May 22, 1936, defendant, a foreign corporation, entered into a contract of insurance with plaintiff, under the terms of which defendant obligated itself to assume all liability not exceeding five thousand dollars for personal injuries to one person by reason of the ownership and/or use of a Dodge sedan owned by plaintiff. The insurer further agreed to investigate at its own cost any accident reported to it, and to settle any claim as the insurer deemed advisable, and, if action were brought against the assured on account of an accident, to defend such action in the name and on behalf of the assured,

unless or until the insurer elected to effect settlement thereof.

April 10, 1937, while driving his Dodge sedan across the Deschutes river bridge in Thurston county, plaintiff's sedan collided with a Chevrolet sedan, owned and operated by Arthur L. Johnson. As a result of that collision, Johnson sustained a serious compound fracture of his left leg which permanently and seriously impaired the usefulness of that leg.

On or about September 11, 1937, Johnson instituted an action to recover against Burnham for the injuries he had sustained. The trial of that action resulted in disagreement of the jury. Judgment was entered July 12, 1938, in the amount of $21,400, upon verdict of the jury rendered in favor of Johnson on the second trial of the action. Defendant insurer had charge of the two trials of the action. It paid the amount of the insurance policy, five thousand dollars, and refused to conduct an appeal. On Burnham's appeal, the judgment was affirmed. *Johnson v. Burnham,* 198 Wash. 500, 88 P. (2d) 833.

In January, 1940, plaintiff assured instituted this action against defendant insurer to recover the difference between the face of the policy of insurance and the amount of the judgment recovered against the assured in *Johnson v. Burnham, supra.* This action is based on the alleged negligence of defendant in the investigation, preparation, and trial of the case of *Johnson v. Burnham, supra,* and the alleged bad faith of defendant insurer in not attempting to secure a settlement with Johnson at a time when one could have been effected, and defendant's rejection of proposals of Johnson's counsel for settlement of the action. Defendant's motion for a nonsuit at conclusion of plaintiff's case was denied. Defendant stood upon its motion and did not introduce any evidence. Trial of the

cause to the court sitting with a jury resulted in verdict in favor of plaintiff in the amount of $17,098.20. From judgment entered on the verdict, motion for judgment notwithstanding the verdict having been overruled, defendant appealed.

The alleged negligence and bad faith of appellant upon which respondent bases his right of recovery are failure to timely investigate the accident, rejection of Burnham's request to call material witnesses in trial of *Johnson v. Burnham, supra,* and refusal to settle the case or to enter into negotiations to effect a settlement of the case.

█ It is prerequisite to recovery by respondent for alleged negligence of appellant in investigation, preparation, and trial of the case of *Johnson v. Burnham, supra,* that respondent sustain the burden of proving the negligence alleged and that, as a result of such negligence, respondent suffered certain damages. *Sterios v. Southern Surety Co.,* 122 Wash. 36, 209 Pac. 1107.

If appellant negligently failed to investigate the accident in which Johnson was injured until some months thereafter, respondent's recovery because of such negligence would, of course, be conditioned upon whether there was proof that any delay in making an investigation resulted in respondent's deprivation of the benefit of any evidence which would have been available.

█ Did respondent sustain the burden of proving appellant did not act upon reasonable grounds in proceeding as it did but that negligently and/or in bad faith appellant rejected respondent's request to call three witnesses and thereby deprived respondent of the benefit of material evidence? Did counsel for appellant insurer in good faith refuse to compromise Johnson's claim against Burnham? Unless the re-

fusal was in bad faith—*a mistake of judgment is not bad faith*—it cannot be a basis of recovery by respondent against appellant. The authorities uniformly hold that an insurance company is not liable beyond the limits of its policy for failure to compromise a claim against its assured when its determination is made in good faith.

The facts are as follows: Six months subsequent to the above-mentioned automobile collision in which he sustained serious injuries, Johnson commenced an action against Burnham. The cause was tried to one jury which disagreed. The second trial to a jury resulted in verdict and judgment in favor of Johnson. That judgment was affirmed, on Burnham's appeal (*Johnson v. Burnham*, 198 Wash. 500, 88 P. (2d) 833).

Respondent orally notified appellant's two agents (Messrs. Kibbe and Morris) at Tenino immediately following the accident. A report to his company of the accident was made by Morris who, a day or so after the accident (in company with Burnham), visited the scene of the collision and made a rough diagram of the marks and breaks in the bridge where the automobile accident happened. A copy of that drawing was sent to appellant. Sometime later, Mr. Kibbe, agent for appellant, accompanied respondent to the bridge and made an investigation. On or about the time of the first trial of the action by Johnson against Burnham, Mr. Kibbe accompanied Mr. Burnham and an attorney representing Mr. Burnham and insurer (appellant in case at bar) to the scene of the accident. The attorney made a diagram of the bridge, and interrogated a Mr. Mulhall who was present at the bridge during this investigation.

Respondent testified that he requested counsel who represented him and insurer (appellant in case at bar) in trial of *Johnson v. Burnham, supra,* to offer in

evidence the testimony of L. J. Johnson, P. C. Kibbe, and Guy Cooper, who would have testified that any one could stop a car going twelve or fifteen miles an hour within fifteen or twenty feet. The request was denied. Respondent testified that he was not aware of any facts which were ascertainable "that they didn't find out about." There were no eyewitnesses to the accident who were not interviewed and called. The physical facts relative to the condition of the bridge were visible to the jury. The diagram made by an agent of appellant insurer of the bridge the morning after the accident was made available to the jury. There were no facts, according to respondent's testimony, which were not ascertained by appellant. Burnham insisted at all times that the negligence of Johnson, not Burnham's negligence, was the cause of the accident. The jury did not accept Burnham's story.

Immediately prior to the second trial of *Johnson v. Burnham, supra,*—in the first trial the jury disagreed —one of appellant's attorneys informed respondent that Johnson's attorney was very anxious to settle for four thousand dollars. Respondent told appellant's attorney, who also represented respondent at that time, that he thought the insurance company should compromise the claim as Johnson was seriously injured. Appellant's attorney replied that appellant insurer would pay two thousand dollars; that Johnson's attorney "could take it or leave it, just as he pleased."

Appellant's attorney testified that Johnson's attorney indicated "that they might settle for $3,500." Appellant's attorney, who knew that Johnson was seriously injured, after the disagreement of the jury in the first trial, informed Johnson's attorney by letter that he thought that the worst thing that could possibly happen on the second trial would be a disagreed jury, and that, if Johnson's attorney were interested in the

matter, appellant's attorney would endeavor to secure a settlement of two thousand dollars from appellant insurer. Johnson's attorney replied that he had submitted the offer to his client without comment and that his client was not interested.

Except for the investigation described above, appellant did not attempt to consult any witnesses until immediately prior to the commencement of the first trial. That first trial resulted in disagreement of the jury. Appellant's agents made an immediate investigation of the accident. While there is some doubt whether they transmitted at once their report of the result of that investigation to appellant's home office, there is an absence of evidence that the investigations made by appellant's agents and by appellant's counsel failed to produce all material evidence concerning the accident. Respondent very frankly stated that he was not aware of any ascertainable facts which were not discovered by appellant insurer. Respondent failed to show that there was any proof that any delay of appellant in making an investigation resulted in respondent's deprivation of the benefit of any evidence which would have been available had a different character of investigation been made. We repeat that there were no facts other than those which were ascertained by appellant prior to the first and second trials of *Johnson v. Burnham, supra,* which would have been of any service in the defense of the action; and respondent so testified.

The suggestion or intimation that had counsel for appellant interviewed Johnson, prior to the time Johnson retained counsel and when he was unaware of the seriousness of his injury, for the purpose of inducing Johnson to make a settlement in an amount less than that to which he would have been entitled if there was liability, we need not discuss. It would have been

the duty of respondent's counsel to advise Johnson, who was a layman, if counsel for respondent had attempted to thus negotiate with him, to consult counsel before agreeing to a compromise which would result in Johnson's loss of that to which he was entitled.

It is a sufficient answer to the contention of respondent that counsel for appellant were guilty of negligence in rejecting the request of respondent, that L. J. Johnson, P. C. Kibbe, and Guy Cooper be called as witnesses as they would have testified as to the distance within which an automobile traveling at a certain speed could stop, to state that there is no showing that there was not already in the record a sufficiency of such evidence and that the testimony would not have been other than cumulative. There is no showing that the testimony of those three persons would have been material. It must be conceded that the question of its materiality was one upon which reasonable minds might differ, hence counsel's mistake of judgment in not calling those witnesses can not be the basis of recovery by respondent.

Neither does the evidence which is recited above sustain the position of respondent that counsel for appellant made no effort to settle the case and refused to enter into negotiations for compromise of Johnson's claim.

It is true that appellant owed a duty to respondent to investigate the facts and circumstances surrounding the accident which resulted in serious injury to Johnson, and, if that investigation disclosed liability on the part of the assured, it was the duty of appellant insurer to make a good faith attempt to effect settlement. Of course, bad faith of appellant insurer in this respect would render the insurer liable.

It is clear from a reading of the evidence, which is recited above, that counsel for appellant made an effort

to compromise the claim of Johnson and entered into negotiations to effect a settlement. Appellant's counsel were representing Mr. Burnham in the case of *Johnson v. Burnham, supra.* At all times Mr. Burnham was insistent that he was not at fault. The first trial resulted in a disagreement of the jury. The suggestion that Johnson's attorney was anxious to settle for four thousand dollars, which amount is a small percentage of the amount Johnson sought to recover for a serious injury, which offer appellant's counsel refused, considered in the light of all the other facts in this case, evidences the highest good faith on the part of counsel for appellant in the justness and correctness of the defense of nonliability. Counsel for respondent conceded in open court, at the time of the hearing of this appeal, that counsel who represented appellant in the trial court in the case of *Johnson v. Burnham, supra,* were not guilty of bad faith in any particular.

To sustain the position of respondent, it would be necessary for us to indulge in the presumption that ascertainable material evidence was not obtained by appellant, and that the production of such evidence would have changed the verdict. The evidence is to the effect that all ascertainable material evidence was obtained by appellant. So, too, to establish bad faith it would be necessary for us to indulge in the presumptions that there was apparent liability on the part of Burnham; that appellant's counsel could foretell the result of the second trial after the first trial had resulted in disagreement of the jury; that counsel for appellant who represented Burnham in *Johnson v. Burnham, supra,* had no regard for the interest of their clients, as counsel for appellant made an offer of settlement in an amount less than the obligation of the insurer.

Appellant was represented by counsel whom respond-

ent concedes were not guilty of bad faith. Appellant's conduct of the case of *Johnson v. Burnham, supra,* from the beginning to the conclusion of that case, discloses nothing other than good faith on the part of appellant, and that appellant acted upon reasonable grounds in proceeding as it did.

"It is obligatory upon insurer to exercise reasonable care in defending a suit against the insured, where it, upon receiving notice, assumes such defense, and this applies whether or not the contract requires it to defend, and an action lies by insured against insurer for breach of implied contract, or in tort for negligence, where the latter so negligently and carelessly prepares for trial of the cause, or conducts the defense, that a judgment is recovered against the employer insured, much in excess of the stipulated policy indemnity. In fact, an indemnity insurer, desiring to secure broad authority for the management of the defense to claims against the insured, and at the same time be relieved of the ordinary responsibility of one who undertakes to act for another, should stipulate for it in plain terms." 5 Couch Cyc. of Insurance Law, pp. 4117-4118, § 1165a.

See, also, 29 Am. Jur., pp. 808-809; 21 A. L. R. 766; 34 A. L. R. 748 *et seq.*; 71 A. L. R. 1467 *et seq.*; *Attleboro Mfg. Co. v. Frankfort Marine, Etc., Ins. Co.,* 240 Fed. 573; *Tyger River Pine Co. v. Maryland Casualty Co.,* 170 S. C. 286, 170 S. E. 346; and *Appleman's Automobile Liability Insurance* (1938 ed.), pp. 225, 226.

In *Wakefield v. Globe Indemnity Co.,* 246 Mich. 645, 225 N. W. 643, the city sought recovery for a loss sustained by reason of failure of insurers to accept a compromise offer of settlement. The policy was for ten thousand dollars. Counsel for the injured person agreed to compromise his action against the city for $4,325. The attorney for the insurance companies recommended acceptance of the offer, saying the case was dangerous. The insurance companies declined to

settle. The injured person recovered a judgment in the amount of fifteen thousand dollars against the city. In holding that the policy amount constituted a deadline of contractual power, obligation, and duty, and that the exclusive power to control settlements, within the amount of the policy, is ceded to the insurer, and that the insurer was liable for bad faith in refusing settlement, the court said:

"We think the rule adopted by the great weight of authority is in harmony with the contract of the parties and should be followed. Defendants are not liable to plaintiff for refusal to compromise Borski's claim unless the refusal was in bad faith.

"The more perplexing questions are, What showing is necessary to make out a case of bad faith on the part of the insurer in refusing to settle? and whether the testimony raises a jury issue thereon. Upon the record here, we are not concerned with whether a finding of bad faith would have been against the great weight of the evidence. The question is whether the testimony most favorable to plaintiff raises an issue of fact.

"It is not bad faith if counsel for the insurer refuse settlement under the *bona fide* belief that they might defeat the action, or, in any event, can probably keep the verdict within the policy limit, *Stowers Furniture Co. v. American Indemnity Co.* (Tex. Civ. App.), 295 S. W. 257; or have a 'fighting chance' to win, *New Orleans, etc., R. Co. v. Casualty Co.*, 114 La. 154 (38 South. 89, 6 L. R. A. [N.S.] 562). A mistake of judgment is not bad faith. *Mendota Electric Co. v. New York Indemnity Co.* 175 Minn. 181 (221 N.W. 61)."

*Lawson & Nelson Sash & Door Co. v. Associated Indemnity Corp.*, 204 Minn. 50, 282 N. W. 481, grew out of the recoverey of a judgment for ten thousand dollars, in an action to recover twenty-five thousand dollars for personal injuries arising out of the alleged negligence of one of plaintiff's employees. The limit of plaintiff's policy of indemnity was seventy-five hundred dollars. The injured person agreed to settle for

sixty-five hundred dollars. That offer of settlement was rejected by insurer's counsel, who made a counter offer of forty-five hundred dollars which the injured person rejected. The assured instituted an action to recover against the insurer the difference between the amount of the policy and the amount of the judgment recovered by the injured person against the assured. On appeal, the judgment in favor of defendant insurer was affirmed. In the course of its opinion, the court said, which language is apt in the case at bar,

"Plaintiff's contractual liability must necessarily be determined by the terms of the policy. Nowhere therein does defendant agree to settle and pay *any judgment,* or to indemnify plaintiff against *any amount* that might be recovered against it. The specified limit is $7,500 plus the cost of defending the litigation. All that has been met and paid by defendant. Nor is there any suggestion of defendant's failure adequately to investigate the facts of the case and to prepare it thoroughly for trial. The pleadings and testimony in the Hofmann case have been carefully read. That case was tried with a high degree of efficiency. The most that can be said for the plaintiff in that case is that there was enough evidence to go to the jury on the questions of McDonald's negligence, Hofmann's contributory negligence, and the proximate cause of Hofmann's hurt. The case was a close one upon the facts. Under such circumstances and taking at full worth the testimony of Mr. Nelson, how can it be said by anyone that the case is one of 'clear' liability? (Compare *Mendota Elec. Co. v. New York Ind. Co.,* 169 Minn. 377, 211 N. W. 317.)

"We think defendant's conduct of the case from beginning to end bespeaks good faith on its part and that it acted upon reasonable grounds in proceeding as it did. After all, the probabilities and even the possibilities were as well known to the plaintiff as to the defendant. Both parties had full knowledge of all the facts. Plaintiff's proof does not even suggest that it was misled by reason of any suppression of facts on the part of defendant nor of any fraud being practiced

by it. The most that can be said about the whole situation retrospectively is that Mr. Watson's judgment was better than that of Mr. Sawyer's, *i. e.*, it would have been better for all concerned if the proposed settlement had been made effective. But, after all, no mortal has the gift of prophecy. Insofar as any standard of due care could be applied to the exercise of honest judgment, we think the result justified no other conclusion than that reached by the trial court. Here, as in *Mendota Elec. Co. v. New York Ind. Co.,* 175 Minn. 181, 184, 221 N. W. 61, 62:

" 'It takes something more than mere mistake to constitute bad faith, particularly with respect to the action of an insurer under a policy of public liability which is not absolutely bound to make a settlement. The right to control negotiations for a settlement must of course be subordinated to the purpose of the contract, which is to indemnify the insured within the contract limit. But it takes something more than error of judgment to create liability. *There must be bad faith with resulting injury to the insured before there can be a cause of action.'* "

In *Georgia Casualty Co. v. Mann,* 242 Ky. 447, 46 S. W. (2d) 777, the assured sought to recover an amount in excess of the policy of insurance, on the ground that the insurance company was negligent in not compromising the case for less than the policy limit. The policy was for five thousand dollars. The injured person offered to settle for thirty-five hundred dollars. The insurer's attorney rejected the offer, saying he thought he had a good case. Verdict was for sixty-five hundred dollars. In reversing the judgment in favor of the assured, the Kentucky court of appeals said:

"Then, too, the rule imposing on the agent liability for his failure to exercise ordinary care, diligence, and skill in attending to work of his principal does not ordinarily apply to mere errors of judgment after he has ascertained the facts. *Weymer v. Belle Plaine Broom Co.,* 151 Iowa 541, 132 N. W. 27, Ann. Cas. 1913A, 451;

*Page v. Wells*, 37 Mich. 415; *Smith v. Fidelity & Columbia Trust Co.*, 227 Ky. 120, 12 S. W. (2d) 276, 62 A. L. R. 1353. In order to deal with the question from a more practical point of view, let us suppose that in this very case the insurance company had authorized its local counsel to defend or settle. Would it be contended for a moment that, although he exercised an honest judgment after ascertaining the facts, the company could recover of him the excess over what the case could have been compromised for on the ground that he failed to make the right choice? Clearly not. The gift of prophecy has never been bestowed on ordinary mortals, and as yet their vision has not reached such a state of perfection that they have the power to predict what will be the verdict of the jury on disputed facts in a personal injury case. The verdict represents the composite judgment of the assenting jurors, and oftentimes is but the resultant expression of conflicting views. Common experience teaches us that, even where the injuries would justify a more substantial verdict, some of the jurors, doubting whether there is any liability at all, are not willing to go that far, but insist on the verdict as returned. Calling it negligence for an agent not to divine what would be the result of a jury trial on disputed evidence, and permitting a jury to determine the question not solely on the facts as presented to him, but in the light of the subsequent verdict of the jury, would carry his responsibility beyond the bounds of reason and further than the demands of justice require. There is no reason why a different rule should apply to the case in hand. The facts were investigated, the evidence on the question of liability was conflicting, and the most that can be said is that in refusing to settle, the insurance company committed a mere error of judgment for which it cannot be held liable.

"In announcing this conclusion we do not mean to be understood as holding that under no circumstances may an insurer incur liability in excess of the limit fixed by the policy for its refusal to settle. The agent is always under the duty to exercise the utmost good faith toward his principal, and we agree with the courts that hold that, if an insurer in refusing to settle acts

in bad faith, it may become liable in excess of the policy limit. What facts will constitute bad faith need not now be determined. It is sufficient for the purpose of this case to say that neither the facts pleaded nor proved showed bad faith on the part of the insurance company, and that its motion for a peremptory instruction should have been sustained."

In *Noshey v. American Automobile Ins. Co.*, 68 F. (2d) 808, the insurer issued a policy in the amount of ten thousand dollars to plaintiff, against whom an action was instituted by a person injured by assured to recover forty thousand dollars. The injured person offered to settle for ten thousand dollars, and the assured urged prompt acceptance of the offer. The insurer declined to accept until too late, and the result of the verdict was $22,500 against the assured. In the action brought by the assured against the insurer, it was held that the insurance company was liable for the excess on the ground that its rejection of the offer was not in good faith; however, the court said, respecting the contention that an insurer is liable for negligence in refusal to settle:

"The law relating to the liability of an insurer for judgments exceeding the amount named in the policy has been carefully reviewed in recent cases, by the Circuit Court of Appeals of the Fifth Circuit (*American Mutual Liability Insurance Company v. Cooper*, 61 F. (2d) 446, 448), by the Michigan Supreme Court (*Wakefield v. Globe Indemnity Co.*, 246 Mich. 645, 225 N. W. 643), and by the New York Court of Appeals (*Best Building Co. v. Employers' Liability Assur. Corp.*, 247 N. Y. 451, 160 N. E. 911, 912, 71 A. L. R. 1464), and is the subject of exhaustive notes in 43 A. L. R. 326, and 71 A. L. R. 1467. There is no need to multiply citations. It appears to be well settled in cases of limited liability insurance that the insurer may so conduct itself as to be liable for the entire judgment recovered against the insured although the judgment exceeds the amount of liability named in the policy. Some of the cases hold

that the insured is entitled to recover upon proof that the insurer in refusing to settle a claim for damages was guilty of negligence. In so far as any standard of due care may be applied to the exercise of an honest judgment in accepting or refusing an offer of compromise, the test is rejected in the better reasoned cases, and we think rightly so. The practical difficulties in applying such standard are at once suggested by the rhetorical question in the *Best Building Company Case, supra*, 'We may ask what would constitute negligence in the failure to settle a case, as distinguished from bad faith,' and by the laconic observation of the Kentucky Court in *Georgia Casualty Company v. Mann*, 242 Ky. 447, 46 S. W. (2d) 777, 779, 'The gift of prophecy has never been bestowed on ordinary mortals.' Nor within the policy limits has the insurer any contract obligation to effect settlement, as the policy contains no promise that it will do so under any and all conditions or circumstances, and none is to be implied, and beyond the policy limits the insurer has of course no authority to bind the assured by compromise in any amount whatsoever. The prevailing rule seems to be, however, that the insurer must act in good faith toward the assured in its effort to negotiate a settlement."

See, also, *Georgia Casualty Co. v. Cotton Mills Products Co.*, 159 Miss. 396, 132 So. 73 and *Hoyt v. Factory Mutual Liability Ins. Co.*, 120 Conn. 156, 179 Atl. 842.

The following language from *Hoyt v. Factory Mutual Liability Ins. Co., supra*, is apropos, in view of the claimed offer of Johnson to accept a small percentage of the amount he sought to recover in full settlement for his injuries:

"The very fact that the original offer made on behalf of the Langes was to settle for a sum less than the expenditures they claimed might well have been taken as indicating either a serious doubt on their part as to their ability to recover or an unwillingness to go to trial."

The great weight of authority is to the effect that a charge of failure of an insurer to compromise a claim

against the assured is not a valid basis for recovery against the insurer of an amount in excess of the limit fixed by the policy, in the absence of negligence or bad faith. Manifestly, there is no showing of actionable negligence or bad faith.

The judgment is reversed, and the cause remanded with direction to the trial court to dismiss the action.

ROBINSON, C. J., STEINERT, and DRIVER, JJ., concur.

MAIN, J. (dissenting)—As I view the evidence in this case, on the question of whether the appellant, the insurance company, acted in good faith in attempting to make a settlement, it presents a question of fact for the jury to determine, and not a question of law for the court.

For this reason, I dissent.

