[No. 5526-4-III.   Division Three.   August 2, 1984.]

JAMES D. TANK, *Appellant,* v. STATE FARM FIRE
AND CASUALTY COMPANY, *Respondent,* MELVIN
F. WALKER, *Appellant.*

*Clinton J. Henderson,* for appellants.

*Timothy P. Cronin* and *Mullin, Etter & Cronin,* for respondent.

GREEN, J.—On May 20, 1980, Melvin Walker filed a complaint against James Tank alleging Tank intentionally assaulted him. Tank answered claiming self–defense. He tendered his defense to his insurance carrier, State Farm Fire & Casualty Company. State Farm accepted the tender but reserved its right to refuse to pay any judgment because of a provision in the policy excluding coverage for intentional acts. After a bench trial, Tank was found liable to Walker for $16,118.67 in damages and $305.40 in costs. State Farm refused to pay the judgment.

Tank then brought this action alleging State Farm was liable for the judgment. He asserted State Farm breached its fiduciary duties and violated the Consumer Protection Act by failing to make a meaningful attempt to settle or inform him of settlement offers and subordinating his interest to that of State Farm. Walker intervened as a coplaintiff. State Farm moved for summary judgment which was granted. Walker and Tank appeal.

The record shows when Tank tendered his defense to State Farm, its attorney, Ronald K. Mullin, responded that the company reserved its rights concerning coverage of the incident based on the following:

    a. The civil Complaint alleges that Mr. Tank's [*sic*] intentionally assaulted Mr. Walker;

    b. The results of State Farm Fire & Casualty's investigation of this case reveals no facts that are at variance with the allegations of the Complaint.

Assuming that the Plaintiff is successful in establishing that he was injured by the intentional assault of Mr. Tank, it is the position of State Farm Fire & Casualty that there is no insurance coverage for such intentional act. State Farm must await the outcome of the civil action before a final determination of coverage can be made. Meanwhile, State Farm Fire & Casualty has agreed to defend, at the expense of State Farm Fire & Casualty, Mr. Tank in the civil action brought by Mr. Walker.

In an earlier letter he had informed Tank:

Because it is doubtful there is coverage under your insurance policy, you may wish to have Mr. Lofland [Tank's personal attorney], or any other counsel of your choice, continue in the preparation of the defense of this lawsuit. If you choose to have Mr. Lofland continue as your counsel, this will be at your own expense.

State Farm employed attorney Mike Geraghty to represent Tank. Geraghty considered both State Farm and Tank to be his clients and sent all relevant information to State Farm. In January 1981 he sent his evaluation of the case to the claims superintendent reciting the facts as he knew them to be after taking the depositions of Walker and Tank. The letter stated the altercation occurred in April 1980 after both parties had been drinking and while they were driving home. Tank passed Walker on the left in an intersection after Walker had signaled for a left turn. Walker then followed Tank to a parking lot where both got out of their cars. After a short discussion, Tank hit Walker and Walker fell to the ground. Walker claimed Tank proceeded to kick him about the face and head, rendering him unconscious. Tank claimed he hit Walker, who was taller than him, because Walker "kept coming forward". He hit Walker again after Walker "wildly started swinging at [him] . . ." Tank further claimed he kicked Walker while he was on his knees because "Walker started to get up . . ." He did not remember kicking Walker's head.

The letter further stated Walker was hospitalized for 2 days. He claimed he suffered bruises and cuts for which he received stitches. For these losses, he claimed $885.07 in medical expenses and $935 in lost wages. He also claimed as a result of the altercation, he had lost his sense of taste and smell. After reciting these facts, Geraghty concluded:

When all is said and done, I do not think that Judge McCabe will hold that Tank acted in self-defense. . . .

. . . [A]ssuming that Walker is able to establish he has in fact lost the sense of taste and smell as a result of this incident, I believe the Judge under the circumstances will

not be excessive in any award. As indicated above, the specials that have been presented to date amount to $1,820.00. It is my judgment that a low decision range would be from $3500 to $5000. If the Judge sympathizes with Walker, he may award as high as $10,000 to $12,000.

Geraghty stated he informally discussed a settlement range between $3,000 and $5,000 with Walker's attorney, but received a negative response.

After this letter was written, Geraghty interviewed a medical doctor who stated he would testify Walker had, in fact, lost his sense of taste and smell. Geraghty did not obtain an independent examination. He also learned of two eyewitnesses who stated they would testify Walker refused to fight during the incident, was rendered unconscious by Tank's blows and was unconscious when Tank kicked him.

In his deposition, Geraghty stated State Farm told him informally it would contribute $5,000 or less toward settlement; however, he was never specifically authorized to settle. In consultation with Tank, Geraghty concluded Tank did not have sufficient cash to settle; however, he did not evaluate Tank's financial position, inform Tank of State Farm's informal offer, or pursue settlement of any kind after the initial general discussion with Walker's attorney. A letter from Tank's personal attorney to State Farm requesting that they settle appears to have gone unanswered. Walker submitted an affidavit stating he would have "given serious consideration to accepting" an offer of $10,000.

In Tank's affidavit he stated Geraghty never advised him of the potential liability exposure, of possible avenues to settlement, or of the possible $5,000 contribution by State Farm. Nor did he inform Tank he considered State Farm to be his coclient or that he was not representing Tank in relation to questions of coverage.

State Farm was granted summary judgment on the basis no coverage existed by virtue of an exclusion in Tank's policy which states:

1. Coverage . . . [does] not apply to:
   a. bodily injury or property damage which is expected or intended by the insured;

The provision concerning State Farm's obligation to defend Tank states:

If a claim is made or a suit is brought against any insured for damages because of bodily injury or property damage to which this coverage applies, we will:
   a. pay up to our limit of liability for the damages for which the insured is legally liable; and
   b. provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages resulting from the occurrence equals our limit of liability.

Based on the exclusion, State Farm contends it had no liability to pay and hence no obligation to defend Walker's claim against Tank. Tank and Walker argue regardless of State Farm's obligation to pay, since it undertook to defend Tank, it had a duty to do so in good faith. This duty, they argue, includes the obligation to make a meaningful attempt to settle the case when the facts indicated liability on Tank's part. They further argue a question of fact was presented whether State Farm met its duty. We agree with Tank and Walker.

█ It is well established an insurance company which undertakes the defense for its insured may be held liable in damages to the insured for failing to make a good faith attempt to effect a settlement if its investigation discloses liability on the insured's part and its failure to settle is attributable to bad faith or negligence. *Hamilton v. State Farm Ins. Co.*, 83 Wn.2d 787, 523 P.2d 193 (1974); *Burnham v. Commercial Cas. Ins. Co.*, 10 Wn.2d 624, 117 P.2d 644 (1941); *Tyler v. Grange Ins. Ass'n*, 3 Wn. App. 167, 473 P.2d 193 (1970). State Farm urges this court to find those cases distinguishable because they involve partial coverage whereas here there was no coverage. It is true in those cases the insurer paid up to its policy limits and the insured's

damages were the difference between the amounts paid and the judgment. However, the rationale of the cases is equally applicable here: when an insurance company voluntarily undertakes the defense of its insured, it assumes a position of trust and confidence which calls for the exercise of utmost good faith, especially where there is a possibility of a conflict in interest between the insured and insurer.

> "It is obligatory upon insurer to exercise reasonable care in defending a suit against the insured, where it, upon receiving notice, assumes such defense, and *this applies whether or not the contract requires it to defend*, . . .

(Italics ours.) *Burnham v. Commercial Cas. Ins. Co., supra* at 633.

> The typical liability insurance policy contains no express provision requiring the insurer to settle and gives the company control over the defense of the claim and control over the decision concerning opportunities of settlement within policy coverage. The existence of this control of defense and settlement is a necessity of insurance practice, but, with this power given the insurer, the courts have stated there is a duty sounding in tort . . . requiring the insurer to give consideration to the interests of the insured, when negotiating a settlement.

*Tyler,* at 172.

> The insurer's duty to act diligently and in good faith extends up to the full limits of the policy and beyond. Good faith requires that the insurer make its decision as to settlement or defense of the suit *as if no policy limit of liability existed*, . . .

(Italics ours.) *Tyler,* at 178. The policy behind this rule is to protect against allowing the insurance company to consider only its own interests when representing the insured. That policy applies here where the company assumes the defense of its insured but reserves its right to deny coverage after the outcome of the trial. Under these circumstances, allowing the company to consider its own interests first is, as stated in *Tyler* at page 177, "akin to asking the cat to guard the canary . . ."

The controlling question, applying either the bad faith or negligence standard, is whether the company has given equal consideration to the insured's interests and has fairly represented him. *Hamilton*, at 790; *Tyler*, at 177. *Tyler*, at 178 n.6, sets forth the rule as follows:

> With respect to the decision whether to settle or try the case, the insurer, acting through its representatives, must use such care as would have been used by an ordinarily prudent insurer with no policy limit applicable to the claim. The insurer is negligent in failing to settle if, but only if, such ordinarily prudent insurer would consider that choosing to try the case (rather than to settle on the terms by which the claim could be settled) would be taking an unreasonable risk—that is, trial would involve chances of unfavorable results out of reasonable proportion to the chances of favorable results.

Resolution of whether the insurer's duty is breached is for the trier of fact. In making this determination, several factors are relevant:

> The severity of plaintiff's injury giving rise to the likelihood of a verdict greatly in excess of policy limits; lack of proper and adequate investigation of the circumstances surrounding the accident; lack of skillful evaluation of plaintiff's disability; . . . actions which demonstrate greater concern for the insurer's monetary interest than the financial risk attendant to the insured's predicament.
>
> . . . [T]he strength of the injured claimant's case on the issues of liability and damages, . . . and the amount of financial risk to which each party is exposed in the event of a refusal to settle.

*Tyler*, at 174.

> The flat refusal to negotiate, under circumstances of substantial exposure to liability, a demonstrated receptive climate for settlement, and limited insurance coverage may show lack of good faith . . .

*Tyler*, at 179.

Here, viewing the evidence in a light most favorable to Tank, as we are required to do, we find questions of fact exist concerning those factors. The record shows Geraghty considered both Tank and State Farm to be his clients.

After taking Walker's and Tank's depositions, he concluded Tank would be held liable for Walker's injuries. He discussed settlement only informally, suggesting a low figure compared to the potential damages. Thereafter, he learned of additional facts which made liability even more apparent and indicated damages in excess of Walker's initial claim. Although State Farm informally indicated it would contribute up to $5,000 toward settlement, no authority was given to Geraghty to make an offer; nor was Tank advised of the potential contribution despite a request by his attorney that the company attempt to settle the case.

State Farm could not absolve itself from its duty as Tank's insurer simply by turning the case over to Geraghty. Annot., *Duty of Liability Insurer To Settle or Compromise,* 40 A.L.R.2d 168, 171 (1955). In both *Tyler* and *Hamilton,* the court found sufficient evidence for the trier of fact to find a breach of the duty to attempt to settle where, among other factors, no offer was made or the amount of the offer was low and the award potentially large. Here, the facts were equally sufficient to create a breach of duty question. Thus, we reverse for trial.

We also agree with the contentions of Tank and Walker that the acts here create a question of fact as to whether the Consumer Protection Act has been violated. A violation of the act is established by showing the conduct (1) is unfair or deceptive, (2) is within the sphere of trade or commerce and (3) impacts the public interest. *Anhold v. Daniels,* 94 Wn.2d 40, 45, 614 P.2d 184 (1980). Conduct per se impacts the public interest where there is a specific legislative declaration that the public has an interest in the subject matter of the action. *Sato v. Century 21 Ocean Shores Real Estate,* 101 Wn.2d 599, 601–02, 681 P.2d 242 (1984); *Haner v. Quincy Farm Chems., Inc.,* 97 Wn.2d 753, 762, 649 P.2d 828 (1982). It was established in *Salois v. Mutual of Omaha Ins. Co.,* 90 Wn.2d 355, 581 P.2d 1349 (1978) that the business of insurance is one which operates in trade or commerce and has been legislatively declared to be affected by the public interest. *See also Levy v. North*

*Am. Co. for Life & Health Ins.,* 90 Wn.2d 846, 850, 586 P.2d 845 (1978). RCW 48.01.030 requires that "all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters." Hence, if the trier of fact finds State Farm violated its duty to attempt a good faith settlement here, a violation of the act will be established. We therefore also reverse the summary judgment dismissing the Consumer Protection Act claim.

We do, however, affirm the summary judgment to the extent it dismissed Walker's claims. It has consistently been held an action for the insurance company's breach of its duty to exercise good faith is limited to the insured. *Green v. Holm,* 28 Wn. App. 135, 137, 622 P.2d 869 (1981); *Rice v. Life Ins. Co. of N. Am.,* 25 Wn. App. 479, 484–85, 609 P.2d 1387 (1980); *Bowe v. Eaton,* 17 Wn. App. 840, 844–45, 565 P.2d 826 (1977). Tank and Walker cite *Green v. Holm, supra,* which considered a third party's Consumer Protection Act claim under WAC 284–30–320(8). However, that provision merely defines third party claimant; it does not create a cause of action. Neither does WAC 284–30–330, also cited by Tank and Walker, create rights in private parties. That WAC instead defines standards which, if found by the insurance commissioner to have been "violated with such frequency as to indicate a general business practice . . .", may result in the issuance of fines, orders to cease and desist, or suspension or revocation of an insurer's certificate of authority. *See* RCW 48.30.010; RCW 48.05-.140(1); WAC 284–30–400; WAC 284–30–300. Walker's assertion that he is a proper party in interest to challenge State Farm's actions here must therefore fail.

Reversed in part; affirmed in part.

MUNSON, C.J., and THOMPSON, J., concur.

Review granted by Supreme Court November 16, 1984.