[Nos. 50933–6, 50994–8.   En Banc.   March 20, 1986.]

JAMES D. TANK, *Respondent,* v. STATE FARM FIRE
AND CASUALTY COMPANY, *Petitioner,* MELVIN
F. WALKER, *Respondent.*

PAMELA G. JOHNSON, *Appellant,* v. PUBLIC
EMPLOYEES MUTUAL INSURANCE COMPANY,
*Respondent.*

*Mullin, Etter & Cronin, P.S.,* by *Timothy P. Cronin,* and *Reed, McClure, Moceri, Thonn & Moriarty,* by *William R. Hickman* and *Karen Southworth Weaver,* for petitioner.

*Gould, Russo, Eitreim & Barrett,* by *Robert B. Gould* and *Douglas K. Barrett,* for appellant.

*Clinton J. Henderson,* for respondents Tank and Walker.

*Keolker & Swerk,* by *Robert A. Keolker,* for respondent Public Employees Mutual Insurance Co.

*Bryan P. Harnetiaux* on behalf of Washington Trial Lawyers Association, amicus curiae for respondent Tank.

*Bertha B. Fitzer* on behalf of Washington Association of Defense Counsel, amicus curiae for the insurers.

BRACHTENBACH, J.—These two cases were consolidated. Both present the issue whether a third party claimant may sue an insurer directly for breach of the insurer's duty of good faith. To fully address that question, the portion of Tank v. State Farm Fire and Casualty Company which involves Walker, the third party claimant, is consolidated with Johnson v. Public Employees Mutual Insurance Company and analyzed in part II.

That portion of Tank v. State Farm Fire & Casualty Company which involves an insured's claims against his insurer for breach of duty of good faith is addressed in part I.

I

The case involving Tank presents the question, broadly stated, of the nature of an insurance company's duty of good faith toward its insured when the company defends under a reservation of rights, and whether State Farm Fire and Casualty Company (State Farm) breached that duty. We hold that the duty of good faith of an insurance company defending under a reservation of rights includes an enhanced obligation of fairness toward its insured. Potential conflicts between the interests of insurer and insured, inherent in a reservation of rights defense, underlie this enhanced obligation. In this case, however, there is insufficient evidence on the record to support the finding that a question of fact exists regarding whether State Farm breached its duty of good faith. Thus, we affirm the trial court grant of summary judgment to State Farm and reverse the Court of Appeals. *See Tank v. State Farm Fire & Cas. Co.,* 38 Wn. App. 438, 686 P.2d 1127 (1984).

The incident giving rise to this dispute occurred in April 1980, when Tank assaulted Walker in a supermarket parking lot in Clarkston, Washington. Walker sued Tank, alleging intentional tort. When Tank contacted State Farm, his insurer, the company advised Tank that if his acts were intentional, there was a specific policy provision excluding coverage.

Tank then retained his own attorney, who tendered to State Farm the defense of the Walker suit. After investigation of the incident, State Farm accepted the defense upon a specific clearly stated reservation of the right to contest coverage. State Farm then retained counsel to represent the insurer's interests and retained separate counsel to represent Tank.

The attorney hired by State Farm for Tank maintained contact with the insured, the insured's personal attorney, and the insurer, providing a written evaluation of the case to all parties prior to trial. Defense counsel's opinion was that it was a case of liability, that mutual combat was not a defense, and that self–defense was a slim but possible defense. Counsel also informed all parties that settlement in the $3,000 to $5,000 range had been rejected by Tank's personal lawyer. Although it is not entirely clear from the record, the insured apparently was financially unable to contribute to a settlement. It is also unclear whether State Farm would have contributed estimated defense costs to a settlement. In any event, no settlement was reached, and the case was tried to the court.

The court found Tank liable to Walker for $16,118.67 in damages and $305.40 in costs. This judgment was based on a finding that Tank had committed an intentional tort. Tank has not contested this finding. Moreover, he concedes that the finding that he committed an intentional tort absolves State Farm of any duty to pay.

State Farm refused to pay the judgment. Tank then sued State Farm for breach of duty of good faith. His complaint alleged that State Farm failed to make reasonable efforts to settle the Walker claim and that State Farm subordinated

Tank's interests to its own interests by structuring a defense which would absolve State Farm of liability under Tank's insurance policy. State Farm moved for summary judgment of dismissal, which the trial court granted. Tank appealed to the Court of Appeals, which reversed as to Tank. State Farm now petitions for review of that reversal.

The real issue in this case is: what does an insurer's duty of good faith entail when the insurer defends under a reservation of rights? In addressing this issue, we focus on (1) the evolution of the duty of good faith imposed on insurers in this state, (2) the nature of this duty in a reservation of rights context, and (3) application of the good faith duty in a reservation of rights context to the facts of this case.

*Webster's Third New International Dictionary* 978 (1976) defines "good faith" as "a state of mind indicating honesty and lawfulness of purpose". This definition of good faith as applied to the insurance industry would require that an insurer deal with its insured in a state of mind indicating honesty and lawfulness of purpose.

█ The duty to act in good faith or liability for acting in bad faith generally refers to the same obligation. *Tyler v. Grange Ins. Ass'n*, 3 Wn. App. 167, 173, 473 P.2d 193 (1970). Indeed, we have used those terms interchangeably. *See Murray v. Mossman*, 56 Wn.2d 909, 355 P.2d 985 (1960). However, regardless of whether a good faith duty in the realm of insurance is cast in the affirmative or the negative, the source of the duty is the same. That source is the fiduciary relationship existing between the insurer and insured. Such a relationship exists not only as a result of the contract between insurer and insured, but because of the high stakes involved for both parties to an insurance contract and the elevated level of trust underlying insureds' dependence on their insurers. This fiduciary relationship, as the basis of an insurer's duty of good faith, implies more than the "honesty and lawfulness of purpose" which comprises a standard definition of good faith. It implies "a broad obligation of fair dealing", *Tyler*, at 173, and a responsibility to give "equal consideration" to the insured's

interests. *Tyler*, at 177. Thus, an insurance company's duty of good faith rises to an even higher level than that of honesty and lawfulness of purpose toward its policyholders: an insurer must deal fairly with an insured, giving equal consideration *in all matters* to the insured's interests.

The duty of good faith has been imposed on the insurance industry in this state by a long line of judicial decisions. *See, e.g., Burnham v. Commercial Cas. Ins. Co.*, 10 Wn.2d 624, 117 P.2d 644 (1941); *Evans v. Continental Cas. Co.*, 40 Wn.2d 614, 245 P.2d 470 (1952); *Van Dyke v. White*, 55 Wn.2d 601, 349 P.2d 430 (1960); *Murray v. Mossman*, 56 Wn.2d 909, 355 P.2d 985 (1960); *Waite v. Aetna Cas. & Sur. Co.*, 77 Wn.2d 850, 467 P.2d 847 (1970); *Hamilton v. State Farm Ins. Co.*, 83 Wn.2d 787, 523 P.2d 193 (1974); *Levy v. North Am. Co. for Life & Health Ins.*, 90 Wn.2d 846, 586 P.2d 845 (1978); *Tyler v. Grange Ins. Ass'n*, 3 Wn. App. 167, 473 P.2d 193 (1970); *Weber v. Biddle*, 4 Wn. App. 519, 483 P.2d 155 (1971); *Briscoe v. Travelers Indem. Co.*, 18 Wn. App. 662, 571 P.2d 226 (1977); *Rice v. Life Ins. Co.*, 25 Wn. App. 479, 609 P.2d 1387 (1980); *Gould v. Mutual Life Ins. Co.*, 37 Wn. App. 756, 683 P.2d 207 (1984).

Not only have the courts imposed on insurers a duty of good faith, the Legislature has imposed it as well. RCW 48.01.030 provides, in relevant part:

> The business of insurance is one affected by the public interest, requiring that all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters.

In addition, the Insurance Commissioner, pursuant to legislative authority under RCW 48.30.010, has promulgated regulations defining specific acts and practices which constitute a breach of an insurer's duty of good faith. *See* Washington Administrative Code 284–30–300 *et seq.*

The imposition of an insurer's duty of good faith by both the courts and the Legislature of this state has resulted in lawsuits alleging breach of that duty in both nondefense and defense settings. In a nondefense context, allegations of

breach have arisen from the company's wrongful refusal to pay a claim. (*See, e.g., Levy v. North Am. Co. for Life & Health Ins., supra; Rice v. Life Ins. Co., supra; Gould v. Mutual Life Ins. Co., supra.*) In a defense context, actions for breach of an insurer's duty of good faith have involved a wrongful refusal to defend (*see, e.g., Waite v. Aetna Cas. & Sur. Co., supra; Briscoe v. Travelers Indem. Co., supra*), or failure to settle a lawsuit within policy limits (*see, e.g., Burnham v. Commercial Cas. Ins. Co., supra; Evans v. Continental Cas. Co., supra; Murray v. Mossman, supra; Hamilton v. State Farm Ins. Co., supra; Tyler v. Grange Ins. Ass'n, supra*). While the above "defense context" opinions all dealt with a nonreservation of rights defense, at least two decisions have addressed breach of duty of good faith in the conduct of a reservation of rights defense: *Van Dyke v. White, supra,* and *Weber v. Biddle, supra.* Both *Van Dyke* and *Weber* made it clear that an insurer owes the same duty of good faith to its insured, regardless of the type of defense it has undertaken. The Court of Appeals in *Weber,* at 524, specifically found no distinction between the two types of defenses:

> A reservation of rights agreement is not a license for an insurer to conduct the defense of an action in a manner other than [the manner in which] it would normally be required to defend. The basic obligations of the insurer to the insured remain in effect.

The "basic obligations" referred to in *Weber* amount to a duty of good faith. We have stated that the duty of good faith of an insurer requires fair dealing and equal consideration for the insured's interests. Thus, under *Weber,* the same standard of fair dealing and equal consideration is unquestionably applicable to a reservation of rights defense. We find, however, that the potential conflicts of interest between insurer and insured inherent in this type of defense mandate an even higher standard: an insurance company must fulfill an enhanced obligation to its insured as part of its duty of good faith. Failure to satisfy this enhanced obligation may result in liability of the company,

or retained defense counsel, or both.

This enhanced obligation is fulfilled by meeting specific criteria. First, the company must thoroughly investigate the cause of the insured's accident and the nature and severity of the plaintiff's injuries. Second, it must retain competent defense counsel for the insured. Both retained defense counsel and the insurer must understand that only the *insured* is the client. Third, the company has the responsibility for fully informing the insured not only of the reservation of rights defense itself, but of *all* developments relevant to his policy coverage and the progress of his lawsuit. Information regarding progress of the lawsuit includes disclosure of all settlement offers made by the company. Finally, an insurance company must refrain from engaging in any action which would demonstrate a greater concern for the insurer's monetary interest than for the insured's financial risk.

In addition to the above specific criteria to be met by the company, defense counsel retained by insurers to defend insureds under a reservation of rights must meet distinct criteria as well. First, it is evident that such attorneys owe a duty of loyalty to their clients. Rules of Professional Conduct 5.4(c) prohibits a lawyer, employed by a party to represent a third party, from allowing the employer to influence his or her professional judgment. In a reservation of rights defense, RPC 5.4(c) demands that counsel understand that he or she represents only the *insured,* not the company. As stated by the court in *Van Dyke v. White,* 55 Wn.2d 601, 613, 349 P.2d 430 (1960), "[t]he standards of the legal profession require undeviating fidelity of the lawyer to his client. No exceptions can be tolerated."

Second, defense counsel owes a duty of full and ongoing disclosure to the insured. This duty of disclosure has three aspects. First, potential conflicts of interest between insurer and insured must be fully disclosed and resolved in favor of the insured. The dictates of RPC 1.7, which address conflicts of interest such as this, must be strictly followed. Sec-

ond, all information relevant to the insured's defense, including a realistic and periodic assessment of the insured's chances to win or lose the pending lawsuit, must be communicated to the insured. Finally, *all* offers of settlement must be disclosed to the insured as those offers are presented. In a reservation of rights defense, it is the insured who may pay any judgment or settlement. Therefore, it is the insured who must make the ultimate choice regarding settlement. In order to make an informed decision in this regard, the insured must be fully apprised of all activity involving settlement, whether the settlement offers or rejections come from the injured party or the insurance company.

Based on the foregoing criteria, we find no question of fact in the instant case regarding an alleged breach of duty of good faith by State Farm. In considering the materials which were utilized by the trial court in granting summary judgment to State Farm, it is clear that the company fully investigated the incident involving its insured and the plaintiff. In addition, there were no allegations in Tank's complaint that State Farm neglected to hire competent defense counsel or failed to understand that defense counsel should represent only Tank. In fact, the record is clear that the company retained counsel to represent the company's interests and then hired separate counsel for Tank. Furthermore, State Farm fully informed Tank of all developments regarding policy coverage and the progress of the insured's lawsuit. Finally, there is no evidence on the record to suggest that the company engaged in actions which demonstrated greater concern for its own interests than for the interests of its insured. As to Tank's allegations that State Farm had a duty to settle his lawsuit, we have stated that it is the insured who must decide whether to settle a lawsuit defended under a reservation of rights. To aid in this decision, the insured must be fully informed of all settlement activity. There is no evidence on the record to suggest Tank was not fully informed.

Notwithstanding that Tank's complaint alleged

breach of a good faith duty by State Farm, the insured's real concern appears to be that retained defense counsel provided an improper defense. However, Tank never specifically alleged any breach of duty by retained defense counsel, relying instead on the deposition of that attorney to show that the defense was conducted in a manner contrary to the insured's interests. We, however, cannot consider that deposition in reaching our decision. We are limited here to a review of the propriety of the trial court's grant of State Farm's motion for summary judgment and the Court of Appeals reversal of that grant. Because we are asked to consider only a summary judgment dismissal, we may take into account only those materials upon which the trial court relied in making its ruling. The trial court, in the summary judgment order, specifically recited the materials upon which it relied. Those materials did not include the deposition of defense counsel, and with good cause. The deposition had been taken the day before the summary judgment hearing. It had not then been transcribed. While there was reference to it in argument, the record is clear that it was not considered. Indeed, it was not even filed with the court until a month *after* the summary judgment order was signed. Thus, we are precluded from considering the deposition. Moreover, the Court of Appeals erred in relying on this deposition.

Even assuming the existence of attorney misconduct, which we do not, we must disregard it. Because we must disregard the actions of defense counsel in this case, we are unable to enter into any discussion of an insurer's vicarious and direct liability and/or defense counsel's liability as an independent contractor for breach of defense counsel's duties as an attorney.

In holding that insurers defending under a reservation of rights have an enhanced obligation to insureds, and in enumerating specific criteria which comprise that enhanced obligation, we do not propose to discourage reservation of rights defenses. We recognize that such a defense usually provides a valuable service to the insured. However, if the

outcome of the trial would determine whether coverage exists, and an attorney hired by the insurer conducts a defense while in close communication with the insurer, the defense itself should be closely scrutinized. This is especially true where, as here, the judgment resulted in no liability to the insurance company.

We also recognize that insurers, when faced with defending under a reservation of rights, are not without alternatives. They may sue for a declaratory judgment before they undertake a defense, to determine their liability. *See, e.g., American Employer's Ins. Co. v. Crawford,* 87 N.M. 375, 533 P.2d 1203 (1975). The company may also instruct an insured to pay for his own defense, reimbursing him for defense costs if the final judgment establishes the company's liability. *See, e.g., Waite v. Aetna Cas. & Sur. Co.,* 77 Wn.2d 850, 467 P.2d 847 (1970). In any event, the company must always give equal consideration in all matters to the well being of its insured. "Good conscience and fair dealing [require] that the company pursue a course that [is] not advantageous to itself while disadvantageous to its policyholder; . . ." *Van Dyke v. White,* 55 Wn.2d 601, 611, 349 P.2d 430 (1960) (quoting *Perkoski v. Wilson,* 371 Pa. 553, 557, 92 A.2d 189 (1952)).

## II

Walker, the injured in *Tank v. State Farm Fire & Cas. Co.,* 38 Wn. App. 438, 686 P.2d 1127 (1984), and Johnson, the injured in Johnson v. Public Employees Mutual Insurance Company (PEMCO), both sued insurance companies as third party claimants. Their appeals thus raise a single issue: may a third party claimant who was injured by the insured bring a cause of action against the insurer? We hold that third party claimants may not sue an insurance company directly for alleged breach of duty of good faith under a liability policy. Before proceeding to an analysis, we set forth the facts of these cases separately.

Walker was injured by Tank in a traffic oriented altercation. He sued Tank and recovered a judgment of approxi-

mately $16,000, based on Tank's intentional tort. State Farm, Tank's insurer, refused to pay the judgment, and Tank was apparently unable to pay it. Tank subsequently sued State Farm for breach of duty of good faith (issue 1). Walker joined as a plaintiff–in–intervention, alleging that State Farm breached its duty of good faith to him.

The trial court dismissed Walker's complaint upon State Farm's motion for summary judgment. The Court of Appeals affirmed, holding that an action for breach of good faith against an insurer is limited to the insured. *See Tank v. State Farm Fire & Cas. Co., supra.* By our holding today we affirm both the trial court and the Court of Appeals.

Johnson was injured in a minor automobile accident by Carol Prets, who was PEMCO's insured. Johnson apparently sustained injury to her shoulder, neck, and lower back; however, PEMCO questioned whether Johnson's condition was caused by the subject collision or caused or contributed to by an earlier accident. Prets nonetheless stipulated to entry of an order of liability, and the issue of damages was reserved for trial. In the meantime, Johnson's condition required medication, physical therapy, and visits to a physician. PEMCO refused to advance any expenses for this treatment. Moreover, Johnson alleged that PEMCO had made no effort either to obtain an independent medical examination or to settle the Johnson versus Prets claim. Ultimately, Johnson sued PEMCO for bad faith in failure to settle a claim. Upon PEMCO's motion for summary judgment, the trial court granted dismissal. The court found that third parties had no direct right of action in this context against insurance companies. We affirm the trial court.

In their respective lawsuits against State Farm and PEMCO, both Walker and Johnson alleged negligence per se and violations of the Consumer Protection Act (CPA), RCW 19.86. Petitioners cannot prevail against the insurance companies under either theory.

The statutory violations alleged by petitioners as the basis for their negligence per se actions are bottomed on

RCW 48.30.010. This statute, discussed in part I, generally prohibits unfair or deceptive acts or practices in the business of insurance. It further authorizes the Insurance Commissioner to promulgate regulations which define and prohibit specific unfair acts or practices.

Pursuant to authority under RCW 48.30.010, the Insurance Commissioner developed comprehensive unfair practice regulations which became effective on September 1, 1978. These rules are found in WAC 284–30–300 through –600. They generally set forth certain minimum standards which, if violated with such frequency as to indicate a general business practice, will be deemed to constitute unfair claims settlement practices.

Nothing in the language of these regulations specifically gives third party claimants the right to enforce the rules. Moreover, we are not persuaded that it was the intent of the Insurance Commissioner in drafting these regulations to create a cause of action in third party claimants. The enforcement of these rules on behalf of third parties should be the province of the Insurance Commissioner, not individual third party claimants.

In ruling that a third party claimant has no right of action against an insurance company for breach of duty of good faith, we are not unmindful that a handful of other jurisdictions recognize such a cause of action. *See, e.g., Royal Globe Ins. Co. v. Superior Court,* 23 Cal. 3d 880, 592 P.2d 329, 153 Cal. Rptr. 842 (1979). We do not, however, choose to follow those few.

One Court of Appeals decision, *Green v. Holm,* 28 Wn. App. 135, 622 P.2d 869 (1981), would appear to be contrary to our ruling. In *Green,* the court denied recovery against the insurance company to a third party claimant who was injured by an insured. In reaching this result, the court was forced to recognize the third party claimant's cause of action. However, the court did not make a determination whether a first party *or* third party claimant could sue to enforce WAC 284–30–300 *et seq.* The language of the opinion states clearly that the court was merely "[a]ssuming

without deciding that a private cause of action may be based upon a violation of WAC 284-30-330". *Green,* at 139. An assumption that a third party claimant has such a cause of action, after our holding today, would not be valid.

In addition to allegations of negligence based on RCW 48.30.010 and WAC 284-30-300 *et seq.,* petitioners alleged per se violations of the CPA. It is established that insureds may bring a private action against their insurers for breach of duty of good faith under the CPA. *Salois v. Mutual of Omaha Ins. Co.,* 90 Wn.2d 355, 581 P.2d 1349 (1978); *Levy v. North Am. Co. for Life & Health Ins.,* 90 Wn.2d 846, 586 P.2d 845 (1978); *Rice v. Life Ins. Co. of North Am.,* 25 Wn. App. 479, 609 P.2d 1387 (1980); *Green v. Holm, supra.* It is also established that breach of an insurer's duty of good faith constitutes a per se CPA violation. *Salois v. Mutual of Omaha Ins. Co., supra; Levy v. North Am. Co. for Life & Health Ins., supra.* However, *only an insured* may bring a *per se* action. *Transamerica Title Ins. Co. v. Johnson,* 103 Wn.2d 409, 418, 693 P.2d 697 (1985). Thus, under *Transamerica,* Walker and Johnson cannot prevail under per se CPA theories.

Our decision in *Transamerica,* in addition to limiting per se CPA actions in this context to insureds, suggests in dicta that *non* per se actions may be maintainable by third parties. *Transamerica,* at 418. However, in this case neither Walker nor Johnson alleged non per se CPA violations or made any showing of the damage–inducement–repetition elements of a non per se theory. *See Anhold v. Daniels,* 94 Wn.2d 40, 46, 614 P.2d 184 (1980). Thus, we need not decide if petitioners could have maintained a non per se CPA action.

Our holding today is in apparent conflict with a recent Court of Appeals decision in *Gould v. Mutual Life Ins. Co.,* 37 Wn. App. 756, 683 P.2d 207 (1984). But the result in *Gould* can be explained. The *Gould* court held that a widow, as third party beneficiary under her husband's life insurance policy, could bring a CPA action against the insurer for wrongful refusal to pay a claim. The court found

that the widow was an intended beneficiary under the insurance contract. As such, she was owed a direct contractual obligation by the insurance company and could sue to enforce the obligation. In contrast, Walker and Johnson were not "intended beneficiaries" of the liability policies between the insureds and insurers, and were owed no direct contractual obligation by State Farm and PEMCO. Thus, there is no direct obligation which Walker and Johnson may sue to enforce.

In foreclosing the right of third party claimants to sue insurers for breach of their statutory duty of good faith, we are persuaded that the public as a whole would not benefit from allowing such suits. The goal of the insurance regulations is a well regulated insurance industry. To this end, the Insurance Commissioner, not a third party claimant, should have the primary enforcement right.

DOLLIVER, C.J., and UTTER, PEARSON, ANDERSEN, CALLOW, and DURHAM, JJ., concur.

DORE, J. (concurring in part, dissenting in part)—I concur in the disposition of the third party claimant actions. I dissent to the majority's dismissal of the insured's action for breach of the enhanced duty of good faith by the insurer.

The majority opinion holds that an insurer has an enhanced obligation of good faith in conducting a reservation of rights defense. This enhanced obligation is fulfilled by (1) a thorough investigation of the cause of the insured's accident and the nature and severity of the plaintiff's injuries; (2) retaining competent defense counsel for the insured with the understanding that *only the insured is the client*; (3) fully informing the insured of all developments relevant to policy coverage and progress of the lawsuit, including disclosure of all settlement offers made by the insurer; and (4) refraining from engaging in any action which would demonstrate a greater concern of the insurer's monetary interest than for the insured's financial risk.

The majority has set forth the correct legal standard to be applied to determine whether the insurer has fulfilled its obligation of good faith in a reservation of rights defense. The determination itself, however, should normally be left to the trier of fact. The question thus is whether the insured presents an issue of material fact upon which reasonable minds could disagree.

The majority finds the evidence insufficient to support a finding that a question of fact exists regarding whether State Farm breached any of these obligations to James Tank. I disagree. Viewing the evidence in a light most favorable to Tank, as we are required to do, I find questions of fact exist concerning these obligations of good faith.

In Tank's affidavit he states that he was (1) not advised of the amount of his potential liability exposure, (2) not advised of possible avenues of settlement, including what amount the plaintiff would consider, and that State Farm was willing to contribute $5,000 to an eventual settlement, and (3) not informed that his counsel considered State Farm a *coclient* and supplied all information concerning the lawsuit to the insurer. Clerk's Papers, at 169–70.

Contrary to the findings of the majority, consideration of the Tank affidavit alone raises questions of fact regarding (1) the insurer's understanding that retained defense counsel should represent only Tank, (2) whether the insurer informed Tank of all developments regarding the progress of the insured's lawsuit, (3) whether the insurer engaged in actions which demonstrated greater concern for its own interests than for the interests of insured and (4) whether State Farm failed to disclose settlement offers.

Failure to disclose the offer of $5,000 as a contribution toward settlement prevented the insured from potentially avoiding the $16,000 judgment. The majority concedes that the record is unclear as to whether the insured had the financial ability to take advantage of this offer of contribution. Evidence resolving this question should be developed at trial.

The majority appears to have further erred in rejecting

any consideration of the deposition of retained defense counsel. Although this deposition was not formally filed with the trial court until after the summary judgment was entered, the contents of the deposition were argued before the trial judge in the hearing on the motion for summary judgment and the trial judge specifically stated that he would consider the contents of the deposition assuming that counsel correctly stated its contents. Report of Proceedings, at 5–11. The argument made in summary judgment hearing and supported by the deposition of retained defense counsel was that counsel represented *both* State Farm and the insured in the lawsuit and counsel was required by his contract with State Farm to keep the insurer apprised of the status of the case and his evaluation. The deposition supports the allegations that the insurer demonstrated greater concern for its financial interests than for the insured's financial risk. The deposition also supports the allegations that State Farm failed to communicate to Tank the offer of a $5,000 contribution toward a settlement.

I would hold that there are unresolved factual issues regarding State Farm's violation of its duty to exercise good faith in its defense under reservation of rights, and whether Tank was damaged by his inability to take advantage of the potential for settlement. I would remand for trial.

GOODLOE, J., concurs with DORE, J.