**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

**FILED**
**MARCH 17, 2022**
In the Office of the Clerk of Court
WA State Court of Appeals Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| JOANN CASKEY, an individual, | ) | |
| | ) | No.  38017-3-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| OLD REPUBLIC SURETY COMPANY, | ) | PUBLISHED OPINION |
| a Wisconsin corporation, | ) | |
| | ) | |
| Respondent. | ) | |

STAAB, J. — While a surety company is generally not liable for tort damages to a

third party, the legislature has carved out a specific exception for the setting up and siting

of mobile homes.  Under RCW 18.27.117(3), it is a per se violation of the Consumer

Protection Act (CPA), chapter 19.86 RCW, when a bonding company's failure to

reasonably and professionally investigate and resolve claims made by injured parties

causes a safety risk or severely hinders the use of the mobile home.  Joann Caskey hired a

bonded contractor to set up her new mobile home.  Ms. Caskey contends that the

contractor set up her mobile home incorrectly resulting in damages.  Approximately a

year after the contractor stopped working, Ms. Caskey's attorney wrote a letter to Old

Republic, the surety company that issued the contractor's licensing bond, demanding the

No. 38017-3-III
*Caskey v. Old Republic Surety Co.*

bond proceeds. By response letter, Old Republic informed Ms. Caskey's attorney that

claims against the bond must be brought by way of a lawsuit in superior court pursuant to

RCW 18.27.040.

Ms. Caskey did not file suit against the contractor or the bond. Instead, two-and-

one-half years after the contractor stopped working on her home, she filed a complaint

directly against Old Republic, alleging violations of the Washington "Insurance Fair

Conduct Act" (IFCA), RCW 48.30.010-.015, and the CPA. On Old Republic's motion,

the superior court dismissed all of Ms. Caskey's causes of action on summary judgment.

On appeal, we hold that RCW 18.27.117(3) creates a duty for surety companies

who issue licensing bonds under the "Registration of Contractor's Act" (RCA), chapter

18.27 RCW, to reasonably and professionally investigate claims made by injured parties

when their mobile homes are not set up correctly. For purposes of this statute, the injured

party's "claim" is a claim against the bond. A claim against the bond is not made unless

and until a lawsuit is filed in superior court using the substitute process procedures

required by RCW 18.27.040(3). Once a claim against the bond is made by filing suit, the

surety has an obligation to reasonably and professionally investigate and resolve the

claim.

In this case, since Ms. Caskey never filed suit against the bond, she did not make a

claim against the bond, and Old Republic's duty to investigate under RCW 18.27.117(3)

did not ripen. For the same reason, Ms. Caskey's independent CPA claim, based on Old

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38017-3-III
*Caskey v. Old Republic Surety Co.*

Republic's response letter, was not misleading or an unfair and deceptive trade practice.

Finally, we also reject Ms. Caskey's claim that Old Republic's actions violated the IFCA

because Ms. Caskey was not a first-party claimant and did not qualify for protection

under RCW 48.30.015. We affirm the superior court's dismissal on summary judgment.

BACKGROUND

The relevant facts are not in dispute. Joann Caskey bought a manufactured home

for her and her sister. She paid Bud's & Doug's Mobile Home Service LLC (Contractor)

to install the mobile home on property in Kettle Falls. The contractor was registered with

the Department of Labor & Industries (Department) and bonded through Old Republic

Surety Company (Old Republic), for $12,000.

Ms. Caskey alleges that in December 2017, shortly after beginning the project of

setting up her mobile home, the contractor breached the installation contract. She

asserted that the contractor caused significant damage to the home by installing the

mobile home with defective skirting on bare ground without any pad, gravel, leveling, or

access stairs. The home failed inspection and was denied an occupancy permit in January

2018. The contractor requested additional funds to effect repairs. Ms. Caskey resolved

the mobile home's alleged defects through the manufacturer and the dealership by hiring

other contractors. The existence of the contract and the allegations of breach against the

contractor are asserted but not proven. The parties concede that Ms. Caskey did not file

suit against the contractor.

3

No. 38017-3-III
*Caskey v. Old Republic Surety Co.*

In January 2019, the contractor dissolved its limited liability company. In April 2019, Ms. Caskey's attorney sent Old Republic a demand letter for payment under the contractor's bond. In the letter, Ms. Caskey asserted that she was directly "entitled to recover much more than the $12,000 limit of Bud's and Doug's contractor bond issued by your company. Please consider this correspondence to be a formal claim to the limits of the bond #YLl230029 that was issued to Bud's and Doug's." Clerk's Papers (CP) at 78.

Old Republic responded to Ms. Caskey's letter with its own letter, informing her that any claim against the contractor's bond must be made by filing a lawsuit in superior court. The specific language of the letter provided:

> This is to acknowledge receipt of your correspondence, which was received in this office on April 15, 2019, asserting a claim under the above-captioned bond.
>    From reviewing the information received, it would appear that your client is experiencing problems with the above referenced contractor [Buds & Dougs Mobile Home Service]. Unfortunately, to have a proper claim under this bond, your client must comply with the provisions of RCW 18.27.040. *This statute specifically states that to have a proper claim under the bond, suit must be filed against the Principal and Surety in Superior Court.* There are specific requirements for service of the suit and the timeframes for filing same. Therefore, this means that we will be unable to be of any further assistance to your client at this time.
>    Please do not construe this letter as a waiver of any rights of the surety. Any and all rights and defenses are hereby specifically reserved.

CP at 15, 80 (emphasis added).

4

No. 38017-3-III
*Caskey v. Old Republic Surety Co.*

Ms. Caskey did not file suit against the contractor and the bond.  Instead, in July 2020, she filed suit against Old Republic raising several causes of action, including violations of the CPA and the IFCA.  Ms. Caskey claimed to be the obligor of the surety as a "'first-party claimant.'"  CP at 10.  She claimed to have a per se violation of the CPA based on RCW 18.27.350 and RCW 18.27.117.  Ms. Caskey appeals from the superior court's order dismissing all of her causes of action by summary judgment.

ANALYSIS

A.  STANDARD OF REVIEW

Summary judgment rulings are reviewed de novo, undertaking the same inquiry as the trial court.  *Safeco Ins. Co. of Am. v. Butler*, 118 Wn.2d 383, 394, 823 P.2d 499 (1992).  When the record demonstrates no genuine issue of material fact, summary judgment is appropriate when reasonable persons could reach but one conclusion and the moving party is entitled to judgment as a matter of law.  *Id*. at 394-95; CR 56(c).  Facts and reasonable inferences are made in the light most favorable to the nonmoving party. *Safeco Ins. Co. of Am.*, 182 Wn.2d at 394-95.  Once this initial burden is established, the nonmoving party must rebut the moving party's contentions by setting forth specific facts showing there is a genuine issue for trial.  *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn.2d 1, 13, 721 P.2d 1 (1986); CR 56(e).

5

No. 38017-3-III
*Caskey v. Old Republic Surety Co.*

Likewise, the interpretation of a statute is a question of law subject to de novo

review. *Cosmopolitan Eng'g Grp., Inc. v. Ondeo Degremont, Inc.*, 159 Wn.2d 292, 298,

149 P.3d 666 (2006).

  B.   OVERVIEW OF LICENSING BONDS

The RCA is a comprehensive chapter regulating contractor business practices.

The express purpose of the RCA is to "afford protection to the public" from "unreliable,

fraudulent, financially irresponsible, or incompetent contractors." RCW 18.27.140. The

RCA requires contractors to be registered with the Department. *Int'l Com. Collectors,*

*Inc. v. Carver*, 99 Wn.2d 302, 304, 661 P.2d 976 (1983). The RCA also requires

contractors to maintain a continuous bond or provide proof of a security deposit. *Id*. at

304; RCW 18.27.040(1). For general contractors, the surety bond amount is $12,000; for

specialty contractors, the surety bond amount is $6,000. RCW 18.27.040(1).

The bond required by RCW 18.27.040(1) is considered a noncontractual license

bond.[1] It is a type of performance bond. 33 DAVID K. DEWOLF & MATTHEW C.

ALBRECHT, WASHINGTON PRACTICE: CONSTRUCTION LAW MANUAL § 13.4 (2d ed.

2018). Like other sureties, a licensing bond creates a tripartite relationship between the

---

[1] "There are two general categories of surety bonds: contract bonds and noncontract bonds. Contract bonds include bid bonds, performance bonds, payment bonds, maintenance bonds, advance payment bonds, and supply bonds. Noncontract bonds include: judicial bonds, license and permit bonds." KEVIN L. LYBECK ET AL., THE LAW OF PAYMENT BONDS 1 n.1 (2d ed. 2011) (citing 1 JOHN B. FITZGERALD, RAY H. BRITT & DANIEL D. WALDORF, PRINCIPLES OF SURETYSHIP, ch. 2 n.13 (1991))

No. 38017-3-III
*Caskey v. Old Republic Surety Co.*

surety, the principal (contractor), and the obligee. *See Colorado Structures, Inc. v. Ins. Co. of the W.*, 161 Wn.2d 577, 605 n.15, 167 P.3d 1125 (2007) (plurality opinion). The obligee of the license bond issued under this chapter is the state of Washington. RCW 18.27.040(1).

Washington's licensing bond is continuous with several conditions, including that the contractor "will pay all amounts that may be adjudged against the contractor by reason of breach of contract including improper work in the conduct of the contracting business." RCW 18.27.040(1). When a bonded contractor fails to pay a judgment for damages covered by the bond, the extent of a surety's liability is limited to the penal amount of the bond. RCW 18.27.040(4).

Performance bonds are similar but distinct from insurance policies. While Washington recognizes that insurance companies have a good faith obligation to investigate and handle claims of their insureds, this duty of good faith has never been extended to sureties. *See Tank v. State Farm Fire & Cas. Co.*, 105 Wn.2d 381, 394, 715 P.2d 1133 (1986). Even in the context of direct insurance (as opposed to surety), our Supreme Court has repeatedly held that third-party claimants may not sue insurance companies directly for alleged breach of the duty of good faith. *See id.* at 393.

In this case, Old Republic is a surety, not an insurance company. Ms. Caskey is not a party to the bond. And yet she has filed a tort action, alleging that Old Republic violated a duty to investigate her claim. While this claim would generally be summarily

7

No. 38017-3-III
*Caskey v. Old Republic Surety Co.*

decided on the case law set forth above, Washington recognizes a surety's duty of good

faith in the very narrow circumstances presented by Ms. Caskey.

C.   DERIVATIVE CPA CLAIM

Under RCW 18.27.117, the legislature has declared that the "setting up and siting

mobile/manufactured homes must be done properly for the health, safety, and enjoyment

of the occupants:"

> Therefore, when any of the following cause a health and safety risk to the
> occupants of a mobile/manufactured home, or severely hinder the use and
> enjoyment of the mobile/manufactured home, a violation of RCW
> 19.86.020 shall have occurred:
>
>         (1) The mobile/manufactured home has been improperly installed by
> a contractor registered under chapter 18.27 RCW, or a
> mobile/manufactured dealer or manufacturer licensed under chapter 46.70
> RCW;
>         (2) A warranty given under chapter 18.27 RCW or chapter 46.70
> RCW has not been fulfilled by the person or business giving the warranty;
> and
>         (3) A bonding company that issues a bond under chapter 18.27 RCW
> or chapter 46.70 RCW does not reasonably and professionally investigate
> and resolve claims made by injured parties.

RCW 18.27.117.

The parties disagree on whether this statute creates a private cause of action under

the CPA.  To answer this question, we must interpret the statute.  In doing so, our

primary goal is to carry out the legislature's intent.  *Subcontractors & Suppliers*

*Collection Servs. v. McConnachie*, 106 Wn. App. 738, 741, 24 P.3d 1112 (2001) (citing

*Cockle v. Dep't of Labor & Indus.*, 142 Wn.2d 801, 807, 16 P.3d 583 (2001)).

No. 38017-3-III
*Caskey v. Old Republic Surety Co.*

Legislative intent is derived primarily from the statutory language in the context of the overall legislative scheme. *Id*. If the statute's meaning is plain on its face, then the court must give effect to that plain meaning as the expression of legislative intent. *Christensen v. Ellsworth*, 162 Wn.2d 365, 372-73, 173 P.3d 228 (2007).

To determine whether the legislature intended to imply a private right of action, a reviewing court applies a three-part test established in *Bennett v. Hardy*, 113 Wn.2d 912, 920-21, 784 P.2d 1258 (1990). *Wright v. Lyft, Inc*., 189 Wn.2d 718, 727, 406 P.3d 1149 (2017). "First, we determine whether the plaintiff is within the class for whose 'especial' benefit the statute was enacted; second, whether the explicit or implicit legislative intent supports creating or denying a remedy; and third, whether implying a remedy is consistent with the underlying purpose of the legislation." *Id*.

RCW 18.27.117 states that it benefits "occupants of a mobile/manufactured home." However, RCW 18.27.350 governing CPA violations states, "The surety bond shall not be liable for monetary penalties or violations of chapter 19.86 RCW." Laws of 1986, ch. 197, § 11. Together, these statutory provisions suggest that damages for violations of the CPA will be imposed against the surety and not the bond. Otherwise, the legislature's explicit intent to create a per se CPA violation is clear from the statute's language.

Despite the unambiguous language in RCW 18.27.117, Old Republic contends that third-party tort actions against an insurance company or surety are not recognized in

9

No. 38017-3-III
*Caskey v. Old Republic Surety Co.*

Washington, citing *Tank*. As noted above, *Tank* held that under common law "third party claimants may not sue an insurance company directly for alleged breach of duty of good faith under a liability policy." 105 Wn.2d at 391. *Tank* was decided in 1986. RCW 18.27.117 did not become law until 1987. *See* LAWS OF 1987, ch. 313, § 2. Old Republic fails to cite any authority suggesting that the legislature may not carve out a statutory exception to the common law rule precluding third-party tort claims against an insurer or surety. Instead, Old Republic contends that according to *Tank*, any right of enforcement created by RCW 18.27.117 rests exclusively with the Washington Insurance Commissioner (Commissioner). This argument misconstrues the holding in *Tank*.

*Tank* held that the Commissioner has the authority to develop comprehensive unfair practice regulations under the Washington Administrative Code. 105 Wn.2d at 393. The regulations adopted by the Commissioner did not give third-party claimants the right to enforce the regulations. Whether such a right should be granted under the regulations "should be the province of the Insurance Commissioner, not individual third party claimants." *Id*. But nothing in *Tank* suggests that the legislature has no authority to carve out a statutory exception to the regulations.

Having determined that RCW 18.27.117 creates a private cause of action for a CPA violation, the next question is whether Ms. Caskey is entitled to bring this claim. The statute provides a per se violation of the CPA when "A bonding company that issues a bond under chapter 18.27 RCW or chapter 46.70 RCW does not reasonably and

10

No. 38017-3-III
*Caskey v. Old Republic Surety Co.*

professionally investigate and resolve *claims made by injured parties*." RCW

18.27.117(3) (emphasis added). Old Republic argues that even if the statute creates a

private right of action, Ms. Caskey's action fails because she never made a claim against

the bond.

To determine if Ms. Caskey's demand letter qualified as a claim made by an

injured party, we must determine (1) against whom or what the claim is made, and (2)

how the claim is made. To answer these questions, we must interpret the statute.

Statutory interpretation includes context. Like any statute, the contractor registration

statute should be read as a whole. *Pope & Talbot, Inc. v. Productization, Inc.*, 74 Wn.

App. 197, 201, 872 P.2d 78 (1994).

In the context of recovering against a "bonding company that issues a bond," the

"claims" referenced in RCW 18.27.117(3) can only mean a claim against the bond as

opposed to a claim against the contractor. The surety bond required by

RCW 18.27.040 only covers specific claims against a contractor. *See Ahten v. Barnes*,

158 Wn. App. 343, 354, 242 P.3d 35 (2010) (holding that substitute service procedure

required by RCW 18.27.040 does not convey personal jurisdiction for claims against a

contractor that are not covered by bond). For instance, a homeowner alleging breach of a

contract would have six years to file against the contractor but only two years to bring an

action upon the bond. *See* RCW 4.16.040; RCW 18.27.040(3) (two-year statute of

limitation on actions against bond).

11

No. 38017-3-III
*Caskey v. Old Republic Surety Co.*

A homeowner may have a claim against both the bond and the contractor, but a claim against the contractor will ripen before a claim against the bond. *See* RCW 18.27.040(3) ("Any person, firm, or corporation having a *claim against the contractor* for any of the items referred to in this section may bring suit against the contractor and the bond or deposit in the superior court.") (Emphasis added.) While all claims against the contractor do not necessarily include a claim against the bond, all claims against the bond require a claim against the contractor. *See Cosmopolitan Eng'g Grp.*, 159 Wn.2d at 300 ("[A]n action against the bond must also necessarily claim that a contractor breached a contract or failed to pay.").

In this case, Old Republic is the surety who issued the contractor's licensing bond. As the surety, Old Republic would have no obligation to investigate or resolve a claim against the contractor that is not covered by the bond. Because Old Republic's duty to investigate only arises from claims against the bond, the "claim" referenced in RCW 18.27.117(3) is a claim against the bond.

Having determined that RCW 18.27.117(3) imposes a duty on a surety to investigate claims against the bond, we must next determine how a claim against the bond is made. Our review of the RCA convinces us that the only way to file a claim against a licensing bond is to file a lawsuit pursuant to the procedures set forth in RCW 18.27.040.

12

No. 38017-3-III
*Caskey v. Old Republic Surety Co.*

While licensing bonds are a type of performance bond, they are unique in their nature. The purpose of the licensing bond is to protect the public as opposed to a specific obligee. The bond accomplishes this purpose by providing a guarantee for adjudicated claims that are left unsatisfied, and by providing the Department with a means to suspend a contractor's registration and notify the public of claims against the contractor and the bond. The process set forth in RCW 18.27.040 provides the only means for notifying the Department of actions against the bond and the only means for the Department to direct payments from the bond toward an unsatisfied judgment.

As noted above, the RCA requires contractors to register with the Department and show proof of securing a bond. RCW 18.27.040. The bond's obligee is the State of Washington. RCW 18.27.040(1). The Department is responsible for maintaining contractors' licenses and publishing information to the public, including bond status and complaints against the bond. RCW 18.27.040(3), .120.

The bond is conditioned upon the contractor paying all amounts "adjudged" against the contractor for breach of contract. RCW 18.27.040(1). In other words, a bond is a guarantee that if a contractor fails to pay an adjudicated claim, the bond can be applied toward the judgment amount. 33 DEWOLF, *supra*, § 13:1; 12 AM. JUR. 2d *Bonds* § 25 (2019). If a plaintiff prevails in a lawsuit and receives payment that impairs the bond, the Department will suspend the contractor's license, post the suspension on its

13

No. 38017-3-III
*Caskey v. Old Republic Surety Co.*

public website, and notify the contractor of the suspension.  RCW 18.27.040(7), .060(3), .120.

When suit is filed against the surety for a claim against the bond, service of process is made exclusively through the Department.  RCW 18.27.040(3).  The plaintiff must serve three copies of the summons and complaint on the Department, who then serves the contractor and the surety.  RCW 18.27.040(3).  "Unless the suit is filed in a superior court, the department will not be able to direct payment on an unsatisfied final judgment against a secured contractor."  WAC 296-200A-080(1).  In Washington, the only way to bring an action upon a bond is to file a lawsuit in superior court, naming the principal/contractor and the surety.  RCW 18.27.040; 33 DEWOLF, *supra*, 13.8 ("A residential homeowner who seeks to recover on the bond must file a summons and complaint within two years from the date of substantial completion of the project.").  As the amicus curiae points out, using the proscribed bond claim process allows the Department to fulfill its duties to regulate contractors and provide information to the public.  Amicus Br. at 1-2.

Ms. Caskey argues that filing a claim against the bond can be accomplished with a demand letter.  She does not cite any authority for this position, nor does she refer us to any examples where a demand letter was used to resolve a claim against a bond.  Instead, she argues that this alternative is not foreclosed by RCW 18.27.040(3), which reads:

14

No. 38017-3-III
*Caskey v. Old Republic Surety Co.*

> Any person, firm, or corporation having a claim against the contractor for any of the items referred to in this section may bring suit against the contractor and the bond or deposit in the superior court of the county in which the work was done or of any county in which jurisdiction of the contractor may be had.

Ms. Caskey focuses on the word "may" and argues that filing a lawsuit is discretionary. She asks this court to interpret the word "may" as a choice between filing a lawsuit and other unspecified recovery methods. Old Republic and amicus argue that "may" refers to the choice of venue and not discretion in how to make a claim against the bond.

"Words in a statute must be given their usual and ordinary meaning unless a contrary intent appears." *Stenge v. Clarke*, 89 Wn.2d 23, 28, 569 P.2d 60 (1977) (district court possesses jurisdiction to hear consumer protection claims). The word "may" conveys the idea of choice or discretion. *Id*. In *Stenge*, the petitioner argued that the word "may" in the phrase "may bring a civil action in the superior court" or district court indicated that an injured party is under no compulsion to sue at all. 89 Wn.2d at 28-29. However, the court disagreed, holding that the word "may" merely permits the petitioner to make a choice of forum because a prospective litigant may always choose whether or not to pursue civil action. *Id*. Under *Stenge*, Ms. Caskey's argument is not persuasive.

In addition, Ms. Caskey's argument that a demand letter suffices as a claim against the bond is not workable because a letter fails to trigger the collateral ramifications of an action against the bond. Assuming the surety was able to resolve a claim made by demand letter, the surety is required by statute and bond to pay the obligee, the State of

15

No. 38017-3-III
*Caskey v. Old Republic Surety Co.*

Washington. Without a lawsuit, there is no procedure for the State of Washington to direct those funds to the claimant. *See* WAC 296-200A-080(1). In addition, the lawsuit provides notice to the Department and triggers an automatic suspension of the contractor's license if the bond is used against an unpaid judgment. If more than one person has a claim against the bond pending, the procedures set forth in RCW 18.27.040 establish the priority in the event the bond is insufficient to pay all the claims.

We hold that RCW 18.27.117(3) creates a derivative cause of action for a consumer protection violation against a surety separate from the bond. The surety's duty to investigate "claims made by injured persons" requires the surety to investigate claims made against the bond. A claim against the bond requires a lawsuit according to the procedures set forth in RCW 18.27.040(3). Once the Department serves the surety, the claimant can provide its information to the surety, and the surety has an obligation to perform a reasonable investigation and resolve the case.

Since Ms. Caskey did not file a claim against the bond, Old Republic did not have a duty to investigate her claim against the contractor. Thus, the trial court did not err in dismissing Ms. Caskey's derivative CPA claim on summary judgment.

D.   IFCA VIOLATION

Ms. Caskey also alleges that Old Republic's refusal to investigate and resolve her claim constituted a violation of the IFCA. Specifically, she argues that she is a first-party

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38017-3-III
*Caskey v. Old Republic Surety Co.*

claimant of an insurance policy (the license bond), and Old Republic unreasonably denied her claim to the bond in violation of RCW 48.30.015(1).

Ms. Caskey's cause of action for violation of the IFCA fails because she is not a first-party claimant to the contractor's licensing bond. A "first-party claimant" is "an individual . . . asserting a right to payment as a covered person under an insurance policy or insurance contract arising out of the occurrence of the contingency or loss covered by such a policy or contract." RCW 48.30.015(4); WAC 284-30-320(7). Ms. Caskey was not a party to the bond. As such, she was not a "covered person under an insurance policy or insurance contract." Instead, she is a third-party claimant because she is asserting a claim against the contractor and against the contractor's bond. *See* WAC 284-30-320(17) (A third-party claimant is "any individual . . . asserting a claim against any . . . corporation . . . or other legal entity insured under an insurance policy or insurance contract of the insurer.").

E.    INDEPENDENT CPA CLAIM

Ms. Caskey also filed a cause of action for violating the CPA, alleging that Old Republic's response letter, advising her she must file a lawsuit to make a claim against the bond, was misleading and constituted an unfair and deceptive act or practice under RCW 19.86.020. She acknowledges, however, that if we hold that the only way to file a claim against the contractor's bond is to file a lawsuit under RCW 18.27.040, then Old

17

No. 38017-3-III
*Caskey v. Old Republic Surety Co.*

Republic's letter was not misleading and would not provide a factual basis for an independent CPA violation.

CONCLUSION

We affirm the superior court's summary dismissal of Ms. Caskey's causes of action against Old Republic. As such, we deny Ms. Caskey's request for attorney fees.

_____
Staab, J.

WE CONCUR:

_____
Siddoway, C.J.

_____
Fearing, J.