[No. 7639-6-I.   Division One.   March 3, 1980.]

STUART L. RICE, ET AL, *Appellants,* v. LIFE INSUR-
ANCE COMPANY OF NORTH AMERICA, ET AL,
*Respondents.*

*Gary M. Rusing* and *Rusing & Platte,* for appellants.

*Bonita L. Olson, J. Richard Crockett,* and *Detels, Draper
& Marinkovich,* for respondents.

DURHAM–DIVELBISS, J.—Appeal is taken from the trial court's finding that respondents properly paid accidental death insurance proceeds to one Deborah A. Chrabot, not a party to this lawsuit, instead of the prior named beneficiaries, the appellants herein. We affirm.

In 1973, Cary Howard Rice, decedent, requested voluntary accidental death and dismemberment policy benefits with respondents under a group policy available through his employer Dean Witter & Co., Inc. Decedent chose the employee and spouse plan, $10,000 coverage, and named Lynell Rice, his spouse, as beneficiary.

Under the terms of the master policy, decedent was entitled to change his type of plan or amount of coverage only during the annual spring open enrollment period, or upon experiencing a major life change, such as a marriage or divorce. Decedent was entitled to change his beneficiary at any time. A change of beneficiary became binding upon the respondents when it was received by Dean Witter & Co., Inc.'s designated custodian of beneficiary records, its personnel department located in San Francisco.

During the 1974 open enrollment period, decedent changed his plan to the employee and family plan, increased his coverage to $50,000, and continued his spouse as beneficiary. During the 1975 open enrollment period, decedent continued the employee and family plan, increased his coverage to $100,000, and again continued his spouse as beneficiary.

On October 24, 1975, as a result of his divorce, decedent changed his plan to the employee–only plan, reduced coverage to $50,000, and named as beneficiaries Anita Elayne Rice, his mother; Stuart L. Rice, his brother; and Diane E. Cousineau, his sister. The decedent's estate, although a party to this lawsuit, was not a named beneficiary. No changes were made in 1976.

In March 1977, decedent met Deborah A. Chrabot, and within weeks the pair became engaged. The couple made plans to marry in May 1977. On or about April 26, 1977, during the 1977 open enrollment period, decedent

requested the employee–only plan, requested $100,000 coverage, and named Ms. Chrabot as his beneficiary. Decedent used a form furnished to him by his employer entitled "Request for Voluntary Accident Insurance" (Request), substantially the same as the Request forms used in the prior years. Decedent's 1977 Request form was received by Dean Witter's designated custodian of beneficiary records, its personnel department located in San Francisco, on April 27, 1977. Mr. Rice expired in an automobile–pedestrian accident on April 30, 1977.

The parties agree that the amount of coverage in effect at the time of decedent's death was $50,000, as the terms of the policy delayed the effective date of the increased coverage until, in this instance, June 1, 1977. The respondent tendered $50,000 to Ms. Chrabot upon her claim for the proceeds, and appellants challenge that award.

At trial Ms. Chrabot testified, over objection, that decedent told her approximately 1 week before his death that he was "changing" the beneficiary on all his insurance policies to her. The Dean Witter personnel department employee who served as the company's designated custodian of beneficiary records testified that the Request form used by decedent was the only form an insured under this plan could have used in April 1977, for requesting a change of beneficiary, and that the person named as the beneficiary thereon was automatically considered the beneficiary as of the date that her department received the form.

Appellants first assign error to the trial court's findings that the decedent intended to change the beneficiaries under his group accidental death insurance policy from his family to Ms. Chrabot, and that this change became effective April 27, 1977. They contend that the Request merely shows decedent's intent to make Ms. Chrabot the beneficiary of a $100,000 policy as of June 1, 1977; that there is no proof that decedent intended to revoke his prior beneficiaries, and that the Request is ambiguous on its face.

Respondents argue that decedent used the same form he had used in the past for changing his beneficiary, and that

decedent did, in fact, all that was required of him under the policy to change his beneficiary. Additionally, Ms. Chrabot's uncontradicted testimony of decedent's statement that he was changing his beneficiary was further evidence of his intent.

■ The Washington rule regarding an insured's change of beneficiary was expressed in *Allen v. Abrahamson,* 12 Wn. App. 103, 105, 529 P.2d 469 (1974):

> The general rule in this jurisdiction and elsewhere as to attempted changes of beneficiaries on an insurance policy is that courts of equity will give effect to the intention of the insured when the insured has substantially complied with the provisions of the policy regarding that change. . . .
> Substantial compliance with the terms of the policy means that the insured has not only manifested an intent to change beneficiaries, but has done everything which was reasonably possible to make that change.

The testimony here was uncontroverted that the Request was the only form Dean ·Witter furnished its employees for effectuating a change of beneficiary, that decedent had used a Request form in the past for this purpose, and that decedent had told a witness he intended to make the change of beneficiary that was evidenced by the Request. Although the Request form here does not distinguish between designation and change of beneficiary, the evidence clearly reflects decedent's intent.

Appellants next contend that the testimony of Deborah Chrabot should have been excluded as a "party in interest" under the deadman's statute, RCW 5.60.030. Appellants argue that her interest in the outcome of this lawsuit is obvious; that is, respondents could later proceed against Ms. Chrabot to recover the insurance proceeds paid to her if this trial determined that appellants were the proper beneficiaries. Respondents contend that Ms. Chrabot's testimony was properly admitted because her interest here is not direct and certain and that they would have been unable to proceed against her for restitution.

■ The status of a "party in interest" was discussed in *Adams Marine Serv., Inc. v. Fishel,* 42 Wn.2d 555, 562–63, 257 P.2d 203 (1953):

> The interest which will work a disqualification of a witness under this statute must be a direct and certain interest in the outcome of the litigation, the test being whether he will either gain or lose by the direct legal operation and effect of the judgment of the court in the action in which his competency is challenged. . . . The mere contingency that one might be subjected to an independent claim or suit, depending upon the outcome of the action in which he is called as a witness, is not a disqualifying interest within the purview of RCW 5.60.030.

*See also State v. Robbins,* 35 Wn.2d 389, 213 P.2d 310 (1950); *In re Estate of Tate,* 32 Wn.2d 252, 201 P.2d 182 (1948); *Swingley v. Daniels,* 123 Wash. 409, 212 P. 729 (1923). Recently, the court has distinguished a "party in interest" from a person who is merely interested in the result of the case; the statute disqualifies the former, but does not disqualify the latter. *See Fies v. Storey,* 21 Wn. App. 413, 585 P.2d 190 (1978).

Here, Ms. Chrabot cannot gain or lose by the direct legal operation and effect of the judgment of the trial court. The mere contingency of loss she may, or may not, face in the future is insufficiently "direct and certain" to disqualify her testimony.

Appellants further argue that the admission of certain exhibits, visibly different from photocopies furnished to appellants prior to trial, denied them a fair trial. They contend that the Request admitted at trial bore a date–stamp as having been received in the San Francisco office on April 27, 1977 on both sides of the document, but that a photocopy of the same Request furnished to appellants prior to trial lacked a date–stamp on the front. In addition, that certain handwritten notes made by a Dean Witter employee on an earlier Request were intentionally obscured during photocopying by respondents' counsel during pretrial discovery.

Respondents concede that these discrepancies existed but that none had any direct bearing on the issues for trial. They counter that the trial court accepted the Dean Witter employee's explanation of the date-stamp discrepancy when the court stated:

So I just have to conclude that the stamping on the face of the document was done at a later time and doesn't affect the issues of this case one way or the other.

■ It is clear from the record that the trial court was well aware of these discrepancies and fully explored the issues they presented. The admission of evidence at trial lies largely within the discretion of the trial court, and no error will lie absent the abuse of that discretion. *Goodell v. ITT–Federal Support Servs., Inc.*, 89 Wn.2d 488, 573 P.2d 1292 (1978). No abuse of discretion exists here.

Appellants next contend that respondents acted in bad faith and violated the Consumer Protection Act, RCW 19.86.020, by not paying the insurance proceeds to them. They argue that respondents breached their duty of good faith imposed by RCW 48.01.030 by their "definite design" not to supply information appellants requested, and by altering documents attached to respondents' "Request for Admission of Facts and Genuineness of Documents".

■ Washington courts have held that an insurance company's wrongful refusal to pay a claim constitutes a breach of the company's statutory duty of good faith, which in turn constitutes a per se violation of the Consumer Protection Act, RCW 19.86.020. *See Salois v. Mutual of Omaha Ins. Co.*, 90 Wn.2d 355, 581 P.2d 1349 (1978); *Levy v. North American Co. for Life & Health Ins.*, 90 Wn.2d 846, 586 P.2d 845 (1978); *Rounds v. Union Bankers Ins. Co.*, 22 Wn. App. 613, 590 P.2d 1286 (1979). However, in each of the cases cited it was the insured who brought and prevailed on the RCW 19.86 claim. The legislature has limited the remedy under RCW 19.86.020 to the insured, for as this court has written:

Recognizing the general purposes of the Consumer Protection Act and the insurance code, and reading and considering them together, we find no difficulty in concluding that the legislative intent was to provide a remedy for an insured who suffers due to conduct such as Union Bankers' alleged actions.

*Rounds v. Union Bankers Ins. Co., supra* at 616. Because the appellants are not the insured, they cannot prevail on their RCW 19.86 claim.

Finally, error is assigned to the trial court's exclusion of a standard change of beneficiary form used by some of respondents' group policies. Appellants argue that a change of beneficiary form respondents used with other group policies in April 1977 should have been used to interpret the master policy in question. Respondents contend that the proffered exhibit was irrelevant in that appellants made no showing that this particular form was used in conjunction with the Dean Witter group plan.

The trial court ruled that the exhibit did not appear to be relevant unless appellants could show it was sent to the decedent or that the decedent used it in some form. Appellants made no such showing. Appellants have provided no authority or argument showing that the trial court abused its discretion in this ruling, and so it shall stand.

Affirmed.

SWANSON and ANDERSEN, JJ., concur.

Reconsideration denied March 27, 1980.

Review denied by Supreme Court May 23, 1980.