#23795-a-RWS

**2006 SD 39**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

In the Matter of the Estate of
RONALD DEAN TRAUTMAN
               Deceased.
JEFFREY RONALD TRAUTMAN,
BRADLEY ALLAN TRAUTMAN
and CHAD MICHAEL TRAUTMAN,         Plaintiffs and Appellees,

  v.

NANCY JEAN TRAUTMAN,           Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE A.P. FULLER
Judge

\* \* \* \*

THOMAS E. SIMMONS of
Gunderson, Palmer, Goodsell & Nelson, LLP
Rapid City, South Dakota         Attorneys for plaintiffs
                   and appellees.

KENNETH R. DEWELL of
Johnson Eiesland Law Firm, LLP
Rapid City, South Dakota         Attorneys for defendant
                   and appellant.

\* \* \* \*

ARGUED FEBRUARY 14, 2006

OPINION FILED **04/19/06**

#23795

SABERS, Justice

[¶1.] Nancy Trautman (Nancy) appeals the circuit court's determination that the proceeds of her husband's life insurance policy be divided between his three sons. We affirm.

**FACTS**

[¶2.] Ronald Trautman (Ron) worked as business manager and later the Chief Financial Officer for Rapid City Regional Hospital. He was married to Diane Trautman (Diane) and had three sons: Bradley, Jeffrey, and Chad Trautman (the Sons). As an employee benefit, the hospital provided Ron with a fifty thousand dollar basic life insurance plan through Transamerica Life Insurance Services (Transamerica). Ron also purchased a supplemental life insurance policy through Transamerica in the amount of one hundred thousand dollars. Diane was designated as the sole beneficiary on the basic and the supplemental policy.

[¶3.] Ron and Diane were subsequently divorced. As a result, Ron decided to change the beneficiary on the basic and supplemental policy. On September 29, 1997, Ron signed a "Beneficiary Designation/Change" form, listing "Bradley, Jeffrey, and Chad Trautman" as primary beneficiaries.[1] Transamerica notified Ron by letter that it had received and recorded the change in beneficiary request. Bob McGlone, the hospital's Human Resources Director, testified by deposition as to the

---

1. Exhibit B in Plaintiff's Complaint, later marked Exhibit 2 for deposition, is the "Beneficiary Designation/Change" form. That form, however, only lists the basic term life policy (BTL 2011). There are no documents in the record that demonstrate Ron changed the beneficiary of the supplemental life policy. However, such evidence is not necessary as the defendant's proposed finding of fact #12 concedes that Ron changed the beneficiary designations on the basic and the supplemental policy.

-1-

content of this letter. The letter was admitted as Exhibit 8 without objection. However, Exhibit 8 is not part of the record for this appeal. McGlone's testimony indicates the confirmation pertained to the basic term policy and not the supplemental policy.

[¶4.]     On August 30, 1998, Ron and Nancy were married. Nancy began changing all of her life insurance policies to include Ron as the primary beneficiary. Ron made an application for additional coverage to the Transamerica supplemental life policy. Specifically, Ron requested an increase of one hundred thousand to two hundred thousand dollars. The form Ron completed was titled "Employee Application for Voluntary/Supplemental Group Term Life Insurance." Ron wrote the words "Increase Coverage" near the top of the form. Near the bottom of the form, there is a blank line following the word "beneficiary." Ron listed the beneficiaries as follows:

> $100,000—Brad, Jeff, Chad—Sons
>
> $100,000—Nancy J.—Wife

[¶5.]     On March 16, 1999, Transamerica notified Ron that his application for additional coverage had been denied because of an "admitted medical history." No mention was made of any change in beneficiaries in the letter or any subsequent letter by Transamerica. Ron notified Nancy that the application had been denied. He made no further attempts to change the supplemental policy in any regard.

[¶6.]     There is conflicting testimony as to Ron's belief concerning the rejected application for additional benefits. Nancy testified that it was her belief, based on speaking with Ron, that she was entitled to half of the supplemental policy proceeds

despite the fact that the application for an increase had been denied.  Additionally, she testified that Ron told his attorney, Linda Lea Viken, that he had changed the beneficiaries of his life insurance policies so as to split any proceeds fifty-fifty between Nancy and his three sons.[2]  Ron's sister, Sharon Frank, testified that Ron told her that "his boys" were the sole beneficiaries of a life insurance policy he obtained through the hospital.

[¶7.]        Ron died on May 22, 2003.  Transamerica paid the fifty thousand dollar proceeds of the basic life policy to the Sons.  It then notified the parties of the one hundred thousand dollar supplemental life policy.  However, Transamerica refused to distribute the funds because of the dispute between Nancy and the Sons.

[¶8.]        The Sons brought an action seeking a declaration of rights under the supplemental life policy.  Nancy answered by alleging that the rejected application for additional coverage "was intended to be a separate and distinct change and designation of beneficiaries for [Ron's] supplemental life insurance coverage regardless of the approval or disapproval of [the] application[.]"  The circuit court ruled in favor of the Sons, holding that Ron's rejected application for additional benefits did not create a change of beneficiaries.  Nancy appeals.

## Standard of Review

[¶9.]        "The proper interpretation of an insurance contract presents a legal question, reviewed de novo."  MGA Ins. Co., Inc. v. Goodsell, 2005 SD 118, ¶9, 707 NW2d 483, 485.  Accordingly, we afford no deference to the trial court's legal

---

2.      This statement was allegedly made during a meeting between Ron, Nancy, and attorney Linda Lea Viken.

determinations. Culhane v. Western Nat. Mut. Ins. Co., 2005 SD 97, ¶5, 704 NW2d 287, 289. Findings of fact are reviewed under the clearly erroneous standard. SDCL 15-6-52(a). We will not disturb these findings unless we are "firmly and definitely convinced a mistake has been made." Parks v. Cooper, 2004 SD 27, ¶20, 676 NW2d 823, 829 (quoting Wood v. South Dakota Cement Plant, 1999 SD 8, ¶9, 588 NW2d 227, 229 (additional citations omitted)).

[¶10.] Whether Nancy met her burden that Ron manifested a clear intent to Transamerica that she should be added as a beneficiary for the supplemental policy and that Ron took substantial affirmative action to effect the change.[3]

[¶11.] Generally, an insured may change the beneficiary on his or her insurance policy by adhering to the procedures prescribed in the policy. Stemler v. Stemler, 31 SD 595, 141 NW 780, 781 (1913). However, the Court recognized an equitable exception in *Stemler*. *Id.* at 782; Sheffield v. Modern Woodmen of America, 44 SD 472, 184 NW 239, 240 (1921).

[¶12.] In *Stemler*, this Court rejected an asserted change in beneficiary request where the decedent signed the change in beneficiary form, but failed to make presentment or delivery to the insurance company before he died as required by the policy. 31 SD 595, 141 NW at 780-81. Although the Court used the term "substantial compliance," its rationale was more consistent with strict compliance. The Court noted:

---

3. Nancy does not argue that Ron strictly complied with policy. In fact, she concedes that Ron did not use the standard form and she has presented no evidence, other than a fax discussed in paragraph 23 *infra*, that the purported change was recorded by Transamerica.

> The [policy] ought to be sanctioned, as it makes certain who the beneficiary is, and prevents complications and difficulties arising in determining the right of conflicting claimants.

*Id.* at 783. The Court summarized cases from other jurisdictions, stating:

> It seems to be generally held that a[n] [insurance company] may stipulate methods and conditions by and under which a substitution of beneficiaries may be effected, and, unless such methods and conditions are adopted and complied with, no substitution will take place.

*Id.* However, this Court did recognize that the general rule has "exceptions, well recognized by courts, dependent on the circumstances of each particular case." *Id.* The Court identified the equitable exception of "decreeing that to be done which ought in equity to have been done." *Id.* at 784. The rule was explained as follows:

> Where, prior to his death, he has done everything within his power to comply with the requirements of his contract, where he has presented to the insurer the facts and requested the change of beneficiary prior to his death, and there remained nothing else to be done or that could have been done on his part, and nothing to be done on the part of the insurer except the issuance of the new certificate, under such circumstances the courts have decreed that should be treated as done which should have been done, and held that the change of beneficiary had legally taken place, although, as a matter of fact, the new certificate had not been issued.

*Id.*

[¶13.] In *Sheffield*, this Court refused to find an effective change in beneficiary when the insured listed proposed beneficiaries in the alternative which was not acceptable under the insurer's bylaws. *Id.* at 240. The Court also rejected the plaintiff's contention that the case fell under the equitable exception to the

general rule. *Id.*[4] Because *Stemler* and *Sheffield* are almost one hundred years old, we will examine more recent cases from other jurisdictions that have addressed this issue.

[¶14.]    The Minnesota Supreme Court applies the equitable doctrine in a liberal fashion when determining if a change in beneficiary is effective. The Court employs a two pronged test that examines "(1) whether the insured intended to change the beneficiary and (2) whether he took affirmative action or otherwise did substantially all that he could do to demonstrate that intention *without regard to whether he complied with the change-of-beneficiary provisions in the policy*." Lemke v. Schwarz, 286 NW2d 693, 695 (Minn 1979) (emphasis added). The Court did not require that the insured demonstrate his or her intention to the insurer. *Id.* at 697. Thus, an insured changed the beneficiary of his life insurance policy when he expressed his intent to his daughter via letter, without ever notifying the insurer. *Id.* The Court reasoned:

> There, seems to be, however, little, if any, distinction between writing a letter to the insurer of the change and making an unequivocal statement of such intent in a letter to another, so long as the insurer, for whose benefit the notice requirements exist, is not thereby prejudiced.

*Id.* In short, Minnesota has rejected the holdings of courts that require relatively strict compliance with policy formalities.

[¶15.]    Other courts have adopted a more narrow, "substantial compliance" exception. As the Washington Court of Appeals noted:

---

4.    The North Dakota Supreme Court has also applied these principles. *See* Rasmussen v. Mutual Life Ins. Co. of New York et al., 293 NW 805 (ND 1940).

> The general rule in this jurisdiction and elsewhere as to
> attempted changes of beneficiaries on an insurance policy is that
> courts of equity will give effect to the intention of the insured
> when the insured has substantially complied with the provisions
> of the policy regarding that change[.]

> Substantial compliance with the terms of the policy means that
> the insured has not only manifested an intent to change
> beneficiaries, but has done everything which was reasonably
> possible to make that change[.]

Rice v. Life Ins. Co. of North America, 609 P2d 1387, 1389 (WashApp 1980) (quoting

Allen v. Abrahamson, 529 P2d 469, 470 (WashApp 1974)).[5]

[¶16.]       The Supreme Court of Connecticut examined an insurance policy with

language that is almost identical to that of the policy in the present case.  Engelman

v. Connecticut General Life Ins. Co., 690 A2d 882 (Conn 1997).  In *Engelman*, an

insured had tried changing her beneficiary on at least two occasions.  *Id.* at 884.  On

the second occasion, the insured sent a letter to the insurer that was signed, dated,

witnessed, referenced the policy number, and stated the name of the intended

beneficiary.  *Id.*  The insurer received the letter and acknowledged that it contained

everything that a standard change in beneficiary form required.  *Id.* at 885.

However, the insurer rejected the change because it was not completed on the

insurer's form.  *Id.*  The Supreme Court of Connecticut held against the insurer

citing the rule of substantial compliance.  *Id.* at 888.  The court stated:

> This approach is especially justified when the evidence shows
> that an insured has taken substantial affirmative action in an

---

5.       Pennsylvania, New York, and Connecticut have adopted a similar standard.
         *See* Provident Mutual Life Ins. Co. of Philadelphia v. Ehrlich, 508 F2d 129
         (3rd Cir 1975); Engelman v. Connecticut General Life Ins. Co., 690 A2d 882
         (Conn 1997); Lopez v. Metropolitan Life Ins. Co., 566 NYS2d 359 (NYAppDiv
         1991).

> attempt to effectuate the change. The majority of the decisions on point adopt rules embracing this approach. Several courts have observed or concluded all that is required is that every reasonable effort under the circumstances be made to effect the change. These decisions are sometimes viewed as having adopted a rule of substantial compliance.

*Id.* citing R. Keeton & A. Widiss, Insurance Law (1988) § 4.11(d)(1), pp. 430-31 (internal quotations and additional citations omitted). The Court defined substantial compliance as (1) [where] the owner clearly intended to change the beneficiary and to designate the new beneficiary, and (2) the owner has taken substantial affirmative action to effectuate the change in the beneficiary. *Id.* at 888.[6]

[¶17.]     An insured should comply with the policy requirements when attempting to change a beneficiary. Indeed, those requirements protect the insured, insurer, and the named beneficiary of the policy. The requirements also "prevent[ ] complications and difficulties arising in determining the right of conflicting claimants." *Stemler*, 141 NW at 783. We continue to recognize the equitable exception from *Stemler* and *Sheffield*, and modify it to conform to the more recent, majority doctrine of substantial compliance.

[¶18.]     One relying on the substantial compliance exception has the burden of proving (1) that the policy owner manifested a clear intent to the insurer of a desire to change the beneficiary and to designate the new beneficiary, and (2) that the

---

6.     The federal common law of substantial compliance is similar to the majority of state jurisdictions and requires (1) the insured to evidence his or her intent to make the change and (2) attempts to effectuate the change by undertaking positive action which is for all practical purposes similar to the action required by the change of beneficiary provisions of the policy. Phoenix Mut. Life Ins. Co. v. Adams, 30 F3d 554, 565 (4thCir 1994).

owner has taken substantial affirmative action to effectuate the change. This requires that the insured make every reasonable effort under the circumstances in attempting to effect the change.

[¶19.]	The relevant provision of Transamerica's "Group Term Life Insurance Certificate" provides:

> How to Change a Beneficiary: You may change the Beneficiary by filing a satisfactory written notice with us…. A change of Beneficiary will not be effective until recorded by us through our Administrator's office. When recorded, even if the insured is not then living, the change will take effect on the date the notice was signed, except that any benefits paid before we record a change of Beneficiary will not be subject to the change. An irrevocable Beneficiary may not be changed without the written consent of that Beneficiary.

The term "satisfactory written notice" is undefined. However, the Transamerica "Beneficiary Designation/Change" form requires the insured's name, policy number, social security number, address, signature, the signature of a witness, and the names of the beneficiaries and their relation to the insured. This is the same form Ron used to change the beneficiary from his ex-wife to the Sons. Ron later received a confirmation from Transamerica that they had received the form.

[¶20.]	The form relied upon by Nancy in arguing Ron substantially complied with the policy is not the "Beneficiary Designation/Change" form, but an "Employee Application for Voluntary/Supplemental Group Term Life Insurance." The application not only differs in name from the beneficiary change form but it does not require the signature of a witness. Despite the fact that Ron knew of the beneficiary change form, he did not obtain or complete one. While failing to adhere to the standard form is not dispositive, it bears on whether Ron manifested a clear

intent to Transamerica that he was adding Nancy as a beneficiary for the supplemental policy, even if additional coverage was rejected.

[¶21.]    The supplemental policy was originally for one hundred thousand dollars. In the application, Ron requested an increase to two hundred thousand dollars. After a line titled "Beneficiary," Ron wrote the following:

    $100,000—Brad, Jeff, Chad—Sons.

    $100,000—Nancy J.—Wife.

Nancy relies heavily on this writing as an expression of Ron's intent to entitle her to fifty percent of the proceeds of the policy, and designate the other fifty percent of the proceeds to the Sons. We disagree. The fact that Ron attempted to split the proceeds one hundred thousand for the Sons and one hundred thousand for Nancy, is an indication that her status as beneficiary was contingent on receiving the one hundred thousand dollar increase. No clear intent was expressed in view of the contingency. As mentioned above, the application was rejected. Ron received the rejection letter from Transamerica. He did not receive a confirmation that the beneficiary was changed. Finally, there is no evidence that Ron inquired into whether the beneficiary had been changed or attempted to make a subsequent change. As this Court noted in *Sheffield*, "[w]hen the insured submit[s] an ambiguous request for substitution of beneficiaries, it cannot fairly be said that he had done all that he could or should have done to effect the change." *Sheffield*, 184 NW at 241. Nor can it be fairly said that the ambiguous writing on Ron's application constitutes a clear intent to add Nancy as a beneficiary or every reasonable effort to effect that change.

[¶22.]     Nancy also relies on a faxed communication from Sheri Williams, the Group Life Underwriting Manager for Transamerica, to Nancy's attorney. The fax provides:

> I spoke with Sue Zach (Rapid City Regional Hospital Personnel Benefits Coordinator) and we agreed that the last Group Life change request was made on 01/19/1999 by Mr. Trautman requesting to increase his Voluntary Group Term Life coverage from $100,000 to $200,000.
>
> Transamerica Declined [sic] Mr. Trautman's request for increase and sent him a letter on 03/16/1999. Therefore, the original $100,000 remains unchanged. The 01/19/1999 application indicated that the beneficiary designation should be $100,000 for his three sons and $100,000 for his wife (Nancy). Since the request for increase was declined, the $100,000 benefit amount would be split. $50,000 should be designated to the three sons, and the remaining $50,000 should be designated to his wife Nancy.

The Sons objected to this fax on the grounds that it was inadmissible hearsay. However, the circuit court admitted the fax and the Sons have not claimed the trial court's evidentiary ruling was error. Instead, the Sons argue that the trial court was entitled to give the fax less weight because there was no indication that it was reliable. We agree.

[¶23.]     Nancy failed to depose or obtain an affidavit from the insurer or any of its agents in regards to this communication. The fax appears to have been sent as a result of an inquiry from Nancy's counsel. Additionally, the fax does not indicate that the application for additional benefits was recorded by the insurer as a change in beneficiary or that the application constitutes "satisfactory written notice" of a change in beneficiary. Thus, the fax appears to be no more than an after the fact opinion expressed by one of the insurer's employees as to their belief of Ron's intent

when he completed the application for additional benefits.  As the North Dakota

Supreme Court noted:

> Upon the death of the insured, rights to the insurance proceeds bec[ome] vested.  It is for the court and not for the [insurance] [c]ompany to determine in whom they vested.  Where rights to insurance proceeds have become vested upon the death of the insured, the insurer may not by subsequent waiver deprive the proper beneficiary of those rights.

*Rasmussen*, 293 NW at 808.  It was within the circuit court's discretion to

determine the appropriate amount of weight to be given to the fax.

[¶24.]        Nancy cites *Rice*, 609 P2d 1387, and *Lemke*, 286 NW2d at 693, for the

proposition that a beneficiary designation in an application for increased life

insurance demonstrates a clear intent to change the beneficiary.  *Rice*, however, is

clearly distinguishable from the present case.  In *Rice*, the insured clearly and

unambiguously stated his intent to change the beneficiary.  609 P2d at 1388.

Moreover, a representative from the insurance company who served as the

custodian of beneficiary records testified that:

> [T]he form used by the decedent was the only form an insured under this plan could have used … for requesting a change of beneficiary, and that the person named as the beneficiary thereon was automatically considered the beneficiary as of the date that her department received the form.

*Id.* at 1389.[7]  No similar testimony was offered in this case.  As to Nancy's reliance

on *Lemke*, we do not find that case persuasive and reject its reasoning.

[¶25.]        Finally, Nancy attempts to use the statements Ron made to her and

his attorney as evidence of intent to change the beneficiary.  However, those

---

7.    The decedent in *Rice* had also used this type of form to successfully change beneficiaries in the past.  609 P2d at 1389.

statements conflict with Ron's statement to his sister, Sharon Frank. Moreover, those statements do not amount to a statement of clear intent to *the insurer* and the appropriate weight to be given to them was for the circuit court.

[¶26.] Nancy has not met her burden on substantial compliance as to either intent or substantial affirmative action. Accordingly, the decision of the circuit court is affirmed.[8]

[¶27.] GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and MEIERHENRY, Justices, concur.

---

8. Nancy also points out that Ron and she received a loan for $101,000 from Wells Fargo Bank. As security for the loan, Ron granted Wells Fargo a second mortgage on the home and assigned the supplemental policy as additional collateral. Nancy argues that this demonstrates a belief by Ron that Nancy was a beneficiary. On the contrary, Ron's assignment of the policy to Wells Fargo merely demonstrates his intent to provide additional collateral. Had a default occurred, Wells Fargo's interest in the policy proceeds would appear to be superior to that of any beneficiary. The assignment of the policy does not demonstrate a belief by Ron as to the identity of the beneficiary.

Alternatively, Nancy argues that she should at least be reimbursed by the Sons for the balance of the Wells Fargo loan she had to pay after Ron's death. Nancy overlooks the fact that the assignment created no obligation on behalf of the Sons. As mentioned above, had Nancy defaulted on the loan, the Sons interest in the proceeds would appear to be junior to that of Wells Fargo's. However, no default occurred and Nancy paid the balance of the loan with proceeds acquired from the sale of the home. After the loan had been satisfied, Wells Fargo's security interest in the policy proceeds was extinguished. Thus, the Sons, are entitled to one hundred percent of the proceeds.